601 A.2d 1229

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Luther L. JARMAN, Jr., Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 27, 1991.

Decided Jan. 22, 1992.

Richard K. Renn, for appellant.

John B. Mancke, Mancke and Wagner, Harrisburg, for amicus curiae Pennsylvania Ass'n of Criminal Defense Lawyers.

H. Stanley Rebert, Dist. Atty., Gerald A. Lord, Asst. Dist. Atty., Glenn S. Coffey, York, for appellee.

Stuart Suss, Deputy Dist. Atty., for amicus curiae Pennsylvania District Attorneys Ass'n.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

In 1988, in a trial by jury in the Court of Common Pleas of York County, the appellant, Luther L. Jarman, Jr., was convicted of operating a motor vehicle while under the influence of alcohol. An appeal was taken to the Superior Court, whereupon the judgment of sentence was affirmed. 398 Pa.Super. 645, 573 A.2d 620. We granted allowance of appeal. 525 Pa. 611, 577 A.2d 543.

At 9:11 p.m. on October 15, 1987, a state trooper noticed that appellant was driving a vehicle with a burned-out headlight bulb. He followed appellant for approximately one-half mile but did not notice anything unusual about his driving. Appellant maintained a steady course within his lane and did not travel at an excessively fast or slow speed. The trooper nevertheless decided to stop appellant because of the burned-out bulb.

Upon making the stop, the trooper noticed that there was an odor of alcohol on appellant's breath. He ordered appellant to exit from his vehicle to perform three field sobriety tests. Appellant's performance of the tests was somewhat substandard. When asked to walk heel-to-toe for nine steps, appellant walked only eight steps. When asked to close his eyes and touch one of his fingers to the tip of his nose, appellant touched below his nose in the region of his upper lip. And when asked to raise one of his feet in the air for fifteen seconds, appellant set his foot down too soon. The trooper, believing that appellant was under the influence of alcohol, placed him under arrest. Appellant was transported to a hospital where, at 10:10 p.m., a blood test was performed. The test revealed a blood alcohol content of 0.114%.

Appellant was charged under two provisions of the drunk driving law. The first provision, 75 Pa.C.S. § 3731(a)(1), makes it an offense to drive "under the influence of alcohol to a degree which renders the person incapable of safe driving." At trial, however, appellant was acquitted on this charge. Presumably the jury did not believe that appellant's faculties were sufficiently impaired as to render his driving unsafe. Appellant was convicted, however, of a violation of 75 Pa.C.S. § 3731(a)(4), which provides:

(a) **Offense defined.**—A person shall not drive, operate or be in actual physical control of the movement of any vehicle while:

. . . .

(4) the amount of alcohol by weight in the blood of the person is 0.10% or greater.

The issue presented is whether the evidence was sufficient to sustain the conviction. In reviewing the sufficiency of the evidence we are required to view the evidence, and all reasonable inferences therefrom, in the light most favorable to the Commonwealth as the verdict winner. *Commonwealth v. Hughes*, 521 Pa. 423, 430, 555 A.2d 1264, 1267 (1989). The test is whether the evidence, when so viewed, is

sufficient to prove every element of the crime beyond a reasonable doubt. *Id.*

Appellant argues that, because his blood sample was drawn approximately one hour after he was stopped by the trooper, it did not accurately reflect the content of alcohol in his blood at the time he was driving. See generally *Commonwealth v. Gonzalez,* 519 Pa. 116, 125–34, 546 A.2d 26, 30–35 (1988) (an opinion discussing the difficulty of "relating back" blood alcohol test results to the time of driving). In particular, appellant argues that expert testimony adduced by the Commonwealth on the issue of blood alcohol content was sufficiently ambiguous as to leave open to speculation the question of his blood alcohol content while driving. Upon the record presented, we agree that the evidence of appellant's blood alcohol level was insufficient to prove beyond reasonable doubt that his blood alcohol level was equal to or greater than 0.10% while driving.

In 75 Pa.C.S. § 3731(a)(4), supra, it is made an offense to drive a vehicle *while* one's blood alcohol content is 0.10% or greater. In contrast, we note that the legislatures of certain other states have enacted statutes making it an offense to drive with a blood alcohol content of 0.10% "as shown by" or "as determined by" a blood alcohol test administered within a specified time *after* driving has ceased. See generally *People v. Mertz,* 68 N.Y.2d 136, 506 N.Y.S.2d 290, 497 N.E.2d 657 (1986) (compilation of various states' statutes on drunk driving). Under such statutes, the facts of the present case might readily support a conviction.[1] Our statute, however, is more limited in its focus. It makes one's blood alcohol content *while* driving the pivotal issue.

The legislature has provided that blood tests conducted after suspected drunk drivers have been stopped will be

---

1. Arguably, statutes such as these may be more responsive to societal concerns about drunk driving, making it easier to obtain convictions. Such arguments could properly be addressed to our legislature, rather than to this Court, for we are constrained to apply the plain language of the existing statute.

used as evidence of the suspects' blood alcohol contents while driving. See generally 75 Pa.C.S. § 1547 (chemical testing to determine amount of alcohol). In cases where test results show levels of alcohol significantly above 0.10% and where blood samples have been obtained soon after suspects have been stopped, there is a very strong inference that blood alcohol levels were in the prohibited range while driving. However, where, as in the present case, the blood test result barely exceeded the 0.10% level and the lapse of time between driving and the taking of the blood sample was not insignificant, the inference of guilt is weakened.

The blood test in this case was not performed until approximately one hour after appellant was stopped. It revealed a blood alcohol content that was only narrowly above the 0.10% level, i.e., 0.114%. The Commonwealth introduced testimony from an expert witness who was the director of the hospital laboratory where appellant's blood test was performed. He stated that the laboratory's blood testing equipment had a margin of error of plus or minus 10%, and that this fact could have meant that appellant's blood alcohol level was as low as 0.104%. He testified also that a person's blood alcohol level fluctuates with the passage of time, such that the level gradually rises after drinks have been consumed until a peak is reached roughly sixty to ninety minutes after drinking has ceased, and that, thereafter, the level slowly declines. This testimony was uncontradicted.

Appellant testified that he consumed alcohol at a bar just prior to entering his vehicle and driving. He testified that he stopped at the bar for approximately two hours, during which time he consumed four or five "lite" beers.[2] He finished the last of these around 9 p.m. and then departed in his vehicle. There is no evidence in the record that contradicts this testimony.

2. The trooper testified that appellant, when initially arrested, claimed to have consumed only two beers. At trial, however, appellant testified that he consumed four or five beers.

Appellant argues, based upon testimony of the Commonwealth's expert witness, that his blood alcohol level likely peaked sometime after he was stopped, perhaps around 10:10 p.m. when the blood test was performed. Indeed, during cross-examination the expert witness for the Commonwealth stated that, if appellant finished his last drink at 9 p.m., as was appellant's uncontradicted testimony, then his blood alcohol level would probably still have been rising at 10:10 p.m. The expert stated further that, if the level was rising at 10:10 p.m., appellant's blood alcohol level at the time of driving was probably less than 0.10%. He could not determine with any degree of clinical certainty, however, whether the level was in fact rising or falling at 10:10 p.m. In short, there was no evidence upon which the expert could offer an opinion as to whether appellant's blood alcohol level was in fact greater than or equal to 0.10% at the time of driving.

This evidence left the jury free to engage in unbridled speculation as to whether appellant's blood alcohol level was at or above 0.10% at the critical time. It is well recognized, however, that a criminal conviction cannot be based upon mere speculation or conjecture. *Commonwealth v. Holzer*, 480 Pa. 93, 98, 389 A.2d 101, 104 (1978).

Given the lapse of one hour between appellant's driving and the taking of a blood sample, the small amount by which the test result exceeded the 0.10% level, the 10% margin of error in the test, and the testimony provided by the Commonwealth's expert witness that appellant's blood alcohol level may indeed have been below 0.10% before the test was administered, we do not believe that it was proven beyond a reasonable doubt that appellant's blood alcohol exceeded permissible limits while driving. Appellant's conviction cannot, therefore, be sustained.

Judgment of sentence reversed.

CAPPY, J., files a dissenting opinion which is joined by McDERMOTT, J.

CAPPY, Justice, dissenting.

Until this Court directly addresses the issue of whether the Commonwealth must present expert testimony to relate the blood alcohol test results back to the time of driving, the Courts of the Commonwealth will continue to be besieged with appeals like the one *sub judice.*

Assuming a lawful arrest and proper blood alcohol testing procedures, I believe that once the Commonwealth has introduced evidence to establish that the defendant's blood alcohol test registered at least .10 percent, the Commonwealth has made a *prima facie* case under 75 Pa.C.S. § 3731(a)(4) (hereinafter, "the statute"). I do not believe that the Commonwealth is required to present expert testimony to relate the test results back to the time of driving in order to prove its case. After the Commonwealth has introduced evidence to establish that the blood alcohol test met or exceeded the .10 percent threshold, the defendant would then be entitled to present expert testimony, if available, to rebut the Commonwealth's *prima facie* evidence that his blood alcohol level was at least .10 percent at the time he was operating a vehicle.

As early as 1936, this Court held that operating a motor vehicle on the highways of the Commonwealth is a privilege, not a right.

> The permission to operate a motor vehicle upon the highways of the Commonwealth is not embraced within the term civil rights, nor is a license to do so a contract or a right of property in any legal or constitutional sense. Although the privilege may be a valuable one, it is no more than a permit granted by the state, its enjoyment depending upon a compliance with the conditions prescribed by it, and subject always to such regulation and control as the state may see fit to impose.

*Commonwealth v. Funk,* 323 Pa. 390, 395, 186 A. 65, 67–68 (1936). Furthermore, it "is now virtually universally accepted that a person with a [blood alcohol percent] of 0.10 should not be driving." *Commonwealth v. Mikulan,* 504 Pa. 244, 248, 470 A.2d 1339, 1341 (1983), quoting *Burg v.*

*People*, 144 Cal.App.3d 169, 192 Cal.Rptr. 531, 534 (1st Dist.1983). As we also stated in *Mikulan* concerning this statute, "the legislature has exercised its broad police powers in these areas in an attempt to halt, or at least to retard, the wanton and senseless slaughter of and injury to innocent people upon our highways caused by drunk drivers." *Id.* 504 Pa. at 248, 470 A.2d at 1341. With these considerations in mind, I do not believe that we should require the Commonwealth to present expert testimony to relate the blood alcohol test back to the time of driving.

As appellant concedes, circumstantial evidence alone is sufficient to convict one of an offense. *Commonwealth v. Littlejohn*, 433 Pa. 336, 250 A.2d 811 (1969). "Circumstantial evidence may be sufficient to prove any element, or all the elements of a crime." *Commonwealth v. Hardcastle*, 519 Pa. 236, 250, 546 A.2d 1101, 1107–08 (1988). Furthermore, when reviewing the sufficiency of the evidence, we consider the evidence in the light most favorable to the Commonwealth along with all reasonable inferences arising therefrom. *Commonwealth v. Meadows*, 471 Pa. 201, 369 A.2d 1266 (1977). Given these principles, why can the Commonwealth not prove a violation of the statute with a highly accurate blood test? Is it not relevant circumstantial evidence sufficient to prove the crime charged?

In the case *sub judice*, the expert called by the Commonwealth testified that alcohol reaches its peak in the bloodstream within 60–90 minutes after consumption; that it was not possible to tell, on the basis of a single blood test, whether the blood alcohol was rising or falling; and that he could not say with clinical certainty what appellant's precise blood alcohol content was at the actual time of driving. However, due to the defendant's Fifth Amendment right not to give evidence against himself, the Commonwealth cannot and should not be able to compel the defendant to relate when he drank, how much he drank, and when he consumed his last drink. Without this information, no expert will be able to ascertain whether the defendant's blood alcohol was rising or falling at the time of the blood

alcohol test. Thus, if we require the Commonwealth to present expert evidence in a case charged under the statute, we are levying an impossible burden on the Commonwealth to prove its case.

If a defendant believes that he was actually operating below a .10 percent blood alcohol limit at the time of driving, he is entitled to obtain an expert. If the defendant is able to provide the expert with a sufficient factual basis to refute the charge that the defendant was driving with a blood alcohol of less than .10 percent, then the expert can so testify.[1] The Commonwealth would of course be free to refute such testimony with its own expert, if it has the need and ability to do so. It then becomes a question of fact for the jury to decide.[2]

I believe that a "case-by-case" review of every conviction under the statute on the grounds alleged in this case will lead to a virtually unenforceable and unworkable law. Every time there is a case in which the test results are between .10 and .15 percent (approximately), and the test was not conducted within minutes of the actual driving, the Commonwealth will be unable to prove its case. This would defeat the vital purpose and intent of the statute and would operate as a *de facto* evisceration of the .10 percent blood alcohol limitation in the statute.

1. In compliance with Rule 305C(2)(a), if the Commonwealth files a motion for pretrial discovery, the Court may require the defendant to turn over to the Commonwealth any

> results or reports of ... scientific tests or experiments made in connection with the particular case ... which the defendant intends to introduce as evidence in chief, or which were prepared by a witness whom the defendant intends to call at the trial, when results or reports related to the testimony of that witness....

I believe that the testimony of an expert in this area falls within this discovery requirement.

2. This belief is premised on the assumption that the defendant stopped for driving while intoxicated remains in police custody until the blood alcohol test is given. If, for some reason, the suspect were not in custody between the time he is stopped while driving and tested, the results of a blood alcohol test which met or exceeded the .10 percent limitation would not establish a *prima facie* case under the statute.

It should be remembered that the purpose of this law is to encourage people to drive safely and soberly. If people choose to drive when their blood alcohol is elevated, then they should take enough care to make certain they are within legal limits. The jury was free to disbelieve appellant's evidence that his blood alcohol was rising at the time of the test (which they apparently did) and find that there was sufficient evidence to convict appellant under the statute.

I fully support the reasoning of the Superior Court in the case of *Commonwealth v. Speights*, 353 Pa.Super. 258, 509 A.2d 1263 (1986), *appeal denied*, 517 Pa. 594, 535 A.2d 83 (1987) and believe that it provides the most logical, fair and safe result.

I dissent.

McDERMOTT, J., joins in this dissenting opinion.