619 A.2d 766

**COMMONWEALTH of Pennsylvania**

v.

**Mark MUKINA, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 17, 1992.

Filed Jan. 27, 1993.

William P. Weichler, Erie, for appellant.

Patrick M. Carey, Asst. Dist. Atty., Erie, for Com., appellee.

Before ROWLEY, President Judge, and JOHNSON and HESTER, JJ.

HESTER, Judge:

Mark Mukina appeals the judgment of sentence of six to twenty-four months imprisonment which was imposed after a jury convicted him of one count of driving while under the influence of alcohol. This was appellant's fourth conviction for driving while under the influence and his fifth arrest for that crime. We reject appellant's contention that his conviction of driving under the influence with a blood alcohol content in excess of .10 percent is infirm because the Commonwealth failed to relate back his blood alcohol content test readings to the time that he was driving. Instead, based upon the reasoning of *Commonwealth v. Jarman*, 529 Pa. 92, 601 A.2d 1229 (1992), and *Commonwealth v. Modaffare*, 529 Pa. 101, 601 A.2d 1233 (1992), we conclude there was sufficient evidence for the jury to determine that appellant was driving with a blood alcohol content of .10 percent or greater, We affirm.

Pennsylvania State Police Trooper Richard E. Gemmell testified that at 12:25 a.m. on June 20, 1991, he and his partner, Trooper Gregory A. Walton, were patrolling Route 6N in Edinboro. One mile before the intersection of Drake Town Road and Route 6N, they started following a white General Motors mini van. They followed the van for approximately one mile, and it was being driven erratically. The vehicle was weaving back and forth and on "three occasions the vehicle did cross the double yellow line of the highway." Notes of Testimony, 2/7/92, at 22. They stopped the van and found that appellant was the sole occupant and driver. The Troopers detected a "strong odor of alcoholic beverage" on

appellant's breath and noticed that he had "slurred speech" and "glassy, bloodshot eyes." *Id.* at 22–23.

The officers asked appellant to exit the car and perform field sobriety tests. He failed them, was given *Miranda* warnings, and was placed under arrest and immediately transported to Millcreek Community Hospital for blood extraction. The blood sample was drawn at 1:26 a.m., one hour after appellant was driving. Appellant's blood alcohol content was .204 percent, more than twice the legal limit.

Appellant cross-examined the Commonwealth's expert toxicologist, Dr. Kenneth Walter Simkowski, extensively about the blood alcohol content test. Dr. Simkowski admitted that the test would not measure a person's blood alcohol content one hour prior to when the blood was drawn, that a second test was not administered, and that if a second test had been administered, it would have established whether appellant's blood alcohol content was rising or falling.

Based on this evidence, the jury convicted appellant of driving while under the influence to a degree which renders the person incapable of safe driving, 75 Pa.C.S. § 3731(a)(1), and driving while under the influence with a blood alcohol content of .10 percent or greater, 75 Pa.C.S. § 3731(a)(4). This appeal followed imposition of the described sentence.

Appellant contends that based on *Jarman* and *Modaffare*, his convictions are infirm. In *Jarman*, a state trooper noticed that one of the headlights of the defendant's car was extinguished. The defendant was driving steadily within his lane and was not traveling too fast or too slow. The trooper pulled over the defendant's car and detected alcohol on his breath. Appellant's performance on the field sobriety tests was slightly substandard. He was transported to a hospital, and one hour after the defendant exited his vehicle, his blood was drawn. His blood alcohol content was .114 percent.

The Supreme Court observed that in order to be convicted under section 3731(a)(4), one's blood alcohol content *while driving* must be .10 percent or greater. The Court determined that the jury lacked a sufficient basis to convict the

defendant under section 3731(a)(4) since the Commonwealth's expert failed to relate back the test results to the time that the defendant was driving. The Court based its decision on the fact that the test result barely exceeded the .10 percent level and that the time lapse between the driving and the taking of the sample was not insignificant. The Court also observed that the expert admitted that the laboratory's blood testing equipment had a margin of error of plus or minus 10%, which would have placed the defendant's blood alcohol level as low as .104 percent at the time that the sample was drawn. Finally, the defendant testified that he had his last drink during a time which would have meant that his blood alcohol content was rising between when he was driving and when the sample was drawn. This evidence was not contradicted. The Court concluded that under those circumstances, the inference of guilt was too weak to sustain the conviction under section 3731(a)(4).

In *Modaffare*, the defendant struck a parked car. Two hours after the accident his blood sample was taken, and he had a blood alcohol content of .108%. The physician who drew the blood sample testified that a person's blood alcohol level fluctuates so that the level rises after drinking until a peak is reached and then declines. He admitted that the defendant's level may have been rising during the time of the accident and when the sample was drawn. Once again, the Court concluded that the expert testimony on the issue of blood alcohol content at the time that the defendant was driving was ambiguous and left open to speculation whether a violation of section 3731(a)(4) occurred. Specifically, the Court's conclusion rested on the fact that the result of the test exceeded the legal limit by only a small amount, and the time lapse between when the defendant was driving and when the blood was drawn was significant.

In both *Jarman* and *Modaffare*, the Court limited its holding to the facts presented. Furthermore, and highly relevant to the present case, the following language appears in both opinions:

In cases where test results show levels of alcohol significantly above 0.10% and where blood samples have been obtained soon after suspects have been stopped, there is a very strong inference that blood alcohol levels were in the prohibited range while driving. However, where, as in the present case, the blood test result barely exceeded the 0.10% level and the lapse of time between driving and the taking of the blood sample was not insignificant, the inference of guilt is weakened.

*Commonwealth v. Jarman, supra,* 529 Pa. at 96, 601 A.2d at 1230–1231; *see also Commonwealth v. Modaffare, supra,* 529 Pa. at 105–06, 601 A.2d at 1235 (where the Court used identical language except that it characterized the two-hour delay between the driving and the extraction of the blood sample as a "significant" delay).

Herein, the blood alcohol content reading was more than double the legal limit. Further, the one hour delay between when the sample was taken and when the defendant was driving was not viewed as significant by the Supreme Court in *Jarman,* it was viewed as "not insignificant." Moreover, the decision in *Jarman* rests upon two key factors not present in this case. First, the expert in *Jarman* admitted that his equipment had a margin of error which would have placed the defendant's blood alcohol content within .004 percent of the legal limit at the time the defendant was driving. Second, the uncontradicted evidence was that the defendant's blood alcohol content would have been rising between the time that he was driving and when the sample was drawn.

Herein, appellant's blood was significantly more than the legal limit, the one hour delay between when he was driving and when the sample was taken is not substantial, and there was no evidence that his blood alcohol content was rising. We therefore conclude that the inference of appellant's guilt was not weak, and there was sufficient evidence to support appellant's conviction under section 3731(a)(4). *Also compare Commonwealth v. Osborne,* 414 Pa.Super. 124, 606 A.2d 529 (1992) (relation-back testimony required since .1488 percent was not a substantial departure from .10 and evidence established that

defendant's blood alcohol content was rising between driving and blood extraction).

Appellant's second argument relates to the form of the trial court instructions. As we conclude that the trial court correctly disposed of that issue, we reject this argument based on its opinion dated April 6, 1992, at pages three to four.

Judgment of sentence affirmed.