642 A.2d 502

COMMONWEALTH of Pennsylvania

v.

**Harry BRIGHT, Appellant.**

Superior Court of Pennsylvania.

Submitted April 17, 1994.

Filed May 18, 1994.

Edward C. Greco, Kulpmont, for appellant.

Robert B. Sacavage, Dist. Atty., Mt. Carmel, for the Com., appellee.

Before CIRILLO, JOHNSON and CERCONE, JJ.

CIRILLO, Judge:

Harry Bright appeals from the judgment of sentence entered in the Court of Common Pleas of Northumberland County. We affirm.

On April 22, 1992, at approximately 11:00 p.m., Officer Brian Chowka stopped Bright at a sobriety checkpoint in Shamokin, Pennsylvania. Noticing the smell of alcohol on his breath, Officer Chowka asked Bright to step out of the vehicle. Once outside of the vehicle, Bright was escorted off the roadway and asked by Corporal Marlin Marose to perform a field sobriety test, consisting of two tests of physical and mental acuity. Unable to complete either test successfully, Bright was arrested and taken to the police station.

Upon reaching the station, Corporal Marose read Bright his *Miranda* warnings and inquired how much alcohol he had consumed. Bright replied that he had six mugs of beer, one shot of whiskey, and a pork chop dinner. Corporal Marose then administered two blood/alcohol (hereinafter "BAC") tests on Bright, using the Intoximeter 3000.[1] The results of these

---

1. This device is proven accurate with a 10% margin of error.

tests, taken at 11:57 p.m. and 11:59 p.m., were .121 and .133 percent, respectively. Bright was immediately charged with driving under the influence. 75 Pa.C.S.A. § 3731(a)(4).[2]

On March 23, 1993, the case proceeded to a jury trial before the Honorable Barry F. Feudale. At trial, the jury, after hearing testimony from Officer Chowka and Corporal Marose, and viewing the videotape of Bright's booking at the police station, heard testimony from John J. Spikes, a forensic pathologist. Spikes testified that in his expert opinion, based upon Bright's weight, the time he left the bar, how much alcohol he had consumed, and the results of the BAC tests, Bright's minimum BAC level at the time he was stopped at the sobriety checkpoint was .12 percent. Upon the close of evidence, the jury found Bright guilty of driving under the influence. Post-verdict motions were filed and denied and Judge Feudale, after considering the pre-sentence report and hearing testimony from Bright, sentenced Bright to the mandatory term of 48 hours to 23 months imprisonment, with parole[3] to commence after the minimum period of 48 hours incarceration. Bright was additionally ordered to pay $700.00 in fees, fines, and costs. This appeal followed.

Bright presents the following issues for our review:

(1) Whether the evidence presented was insufficient to support the verdict?[4]

(2) Whether the court abused its discretion by imposing an unduly harsh sentence?

2. **(a) Offense defined**—A person shall not drive, operate or be in actual physical control of the movement of any vehicle while:

*     *     *     *     *     *

(4) the amount of alcohol by weight in the blood of the person is 0.10% or greater.

75 Pa.C.S.A. § 3731(a)(4) (emphasis added).

3. The terms of the parole included mandatory mental health counseling.

4. We note that Bright also challenged the verdict as against the weight of the evidence. A careful review of the record, however, discloses that Bright baldly asserted this issue without citing any case law or developing any legal argument in support thereof. Accordingly, we will not address this issue.

Bright first argues that the evidence presented at trial was insufficient to sustain the conviction. In reviewing the sufficiency of the evidence, we must view the evidence and all reasonable inferences therefrom in the light most favorable to Commonwealth as the verdict winner. *Commonwealth v. Jarman*, 529 Pa. 92, 94, 601 A.2d 1229, 1230 (1992). "The test is whether the evidence, when so viewed, is sufficient to prove every element of the crime beyond a reasonable doubt." *Id.* at 94–95, 601 A.2d at 1230.

Bright argues that, because his BAC level was determined approximately one hour after he was stopped at the sobriety checkpoint, the BAC tests did not accurately reflect the content of alcohol in his blood at the time he was driving. Specifically, Bright claims that the expert testimony adduced by the Commonwealth did not sufficiently show that his BAC level exceeded .10 percent **while** he was driving and that, as such, the jury was left to impermissibly speculate as to his true level of intoxication. We disagree.

In order to withstand a challenge to the sufficiency of the evidence under the statute in question, 75 Pa.C.S.A. § 3731(a)(4), the Commonwealth must present expert testimony relating back a subsequent BAC test result to the time when the accused was driving. *Jarman, supra.* In other words, the Commonwealth must show that at the time the accused was driving, his BAC level exceeded .10 percent. Absent such a finding, a conviction for driving under the influence cannot stand. *Jarman, supra* (judgment of sentence vacated because the Commonwealth's expert could not state that the accused's BAC level exceeded .10 percent when driving, despite a .113 percent finding one hour later); *Commonwealth v. Modaffare*, 529 Pa. 101, 601 A.2d 1233 (1992) (judgment of sentence vacated as the Commonwealth's expert could not show that the defendant's BAC level exceeded .10 percent when driving, despite a .108 percent finding one hour and fifty minutes later); *Commonwealth v. Osborne*, 414 Pa.Super. 124, 606 A.2d 529 (1992) (judgment of sentence vacated because no expert testimony was presented relating a

.1488 percent BAC finding back to when the defendant was driving, 50 minutes earlier).

In the case at hand, however, the Commonwealth presented ample evidence relating back the BAC test result taken in the station to the time when Bright was driving. The Commonwealth's expert, John J. Spikes, testified that, based upon Bright's weight, the amount of drinks he had consumed,[5] and the .121 and .133 percent BAC test results, at the time Bright passed through the sobriety checkpoint his BAC level was at the very least .12 percent. Because Spikes' testimony went unrefuted, the jury did not have pause to impermissibly speculate as to Bright's BAC level when driving. Accordingly, Bright's argument is without merit.

Bright's final argument is that the trial court abused its discretion in imposing a sentence of imprisonment without addressing or considering his rehabilitative needs. We do not reach the merits of this claim, because Bright failed to preserve this issue for our review. We have long held that in order to properly preserve an issue for review of the discretionary aspects of sentencing, an appellant first **must** timely file a motion for reconsideration of sentence. Pa.R.Crim.P. 1410. *Commonwealth v. Scullin,* 414 Pa.Super. 442, 446, 607 A.2d 750, 752 (1992); *Commonwealth v. Penrod,* 396 Pa.Super. 221, 229, 578 A.2d 486, 490 (1990). Here, Bright failed to file a motion for reconsideration of sentence and, thus, failed to preserve this issue for our review.[6]

Judgment of sentence affirmed.

---

**5.** Spikes also testified that, in relating back from the BAC test results to the BAC level present while Bright operated his vehicle, he gave Bright the benefit of assuming that he consumed his final drink upon exiting the bar. By making this assumption, Spikes' BAC calculation represented the lowest possible result, as the final drink would not have metabolized into his bloodstream until after he was stopped at the checkpoint.

**6.** We note that Bright failed to comply with Pa.R.A.P. 2119(f) by not including within his brief to this court a concise statement of reasons for allowance of appeal. Additionally, Bright's substantive arguments are without merit. Judge Feudale did not commit an abuse of discretion, as he sentenced Bright to the mandatory minimum term as

provided by 75 Pa.C.S.A. § 3731(c)(1)(i). Equally meritless is Bright's claim that Judge Feudale failed to consider his rehabilitative needs in imposing sentence, as the terms of his probation expressly require mandatory mental health counseling.