J-A01025-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LUIS ALBERTO ANTONETTI, JR. | : | |
| | : | |
| Appellant | : | No. 863 EDA 2025 |

Appeal from the Judgment of Sentence Entered December 3, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0003660-2023

BEFORE: DUBOW, J., KUNSELMAN, J., and SULLIVAN, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED APRIL 2, 2026**

Luis Antonetti, Jr. appeals from the judgment of sentence entered after he was convicted of two violations of the Uniform Firearms Act and possession of marijuana with intent to deliver.[1] He challenges the denial of his motion to suppress evidence, the sufficiency of the evidence to sustain his convictions, the constitutionality of Section 6105, and the discretionary aspects of his sentence. We affirm.

Abington Township Police Officer Adrian DeAngelo charged Antonetti with the above crimes based on an incident on April 23, 2023, when Officer DeAngelo found a firearm and marijuana in Antonetti's car. The charges were waived for court, and Antonetti moved to suppress evidence. The matter

---

[1] 18 Pa.C.S. §§ 6105(a)(1) (persons not to possess firearms) and 6106(a)(1) (firearms not to be carried without a license) and 35 P.S. § 780-113(a)(30) (possession with intent to deliver).

proceeded to a suppression hearing on April 8, 2024. The Commonwealth presented the testimony of Officer DeAngelo, as well as a body camera video and the firearm and magazines recovered from Antonetti's car.

The suppression court entered the following findings of fact and conclusions of law on August 27, 2024.

3. Abington Township Police Officer Adrian DeAngelo testified that he has worked for the Abington Township Police Department for approximately seven and a half years. Officer DeAngelo's primary responsibilities include patrolling the streets, responding to 911 emergency calls, and conducting traffic stops and investigations. N.T., 4/8/24, at 10–11.

4. Officer DeAngelo testified that he received basic drug identification [training] at the Police Academy including the odor of marijuana and what it looks like, its texture and consistency, and then has also had several months of [Field Training Officer] program training where he rode one-on-one with other officers to learn how to conduct traffic stops and investigations. *Id.* at 11.

5. Officer DeAngelo explained that he has been involved in approximately 1,000 traffic stops in his career, that he has conducted approximately 150 drug investigations on his own, the majority of which included marijuana, and that he has assisted other officers with their investigations of marijuana. The Officer testified that he knows the odor of burnt and raw marijuana. *Id.* at 11–12.

6. On April 23, 2023, Officer DeAngelo was on regular patrol in the area of Willow Grove in Abington Township, Montgomery County in a full uniform and driving a marked patrol car when he observed a black Toyota Camry driving westbound on Old Welsh Road with its driver's side brake light out and conducted a moving violation when changing lanes from the left to the right without signaling. *Id.* at 12–13.

7. Officer DeAngelo conducted a traffic stop of the Camry at Old Welsh Road and Park Avenue near the Willow Grove Mall at approximately 2:54 p.m. The Officer testified that at this intersection, Old Welsh is a busy state highway with two lanes in

each direction. *Id.* at 16, 19; Commonwealth Exhibit C-1 (Officer DeAngelo's body camera video).

8. Upon contact with the driver, who was the sole occupant of the vehicle, Officer DeAngelo requested and received [Antonetti's] driver's license and registration. [Antonetti] handed the Officer both items which identified him as Luis Antonetti and the registered owner of the Camry. [Antonetti] admitted that sometimes his brake light worked and sometimes it did not, and offered to show the Officer the faulty light connection at the rear of the Camry. While at the driver's side window, Officer DeAngelo smelled the odor of raw marijuana emanating from inside the Camry. N.T., 4/8/24, at 13–14, 31–32.

9. Officer DeAngelo returned to his patrol vehicle to run a check on the driver's license and registration. During this time, Officer Michael Jones arrived as backup pursuant to protocol. Officer DeAngelo explained to Officer Jones that the vehicle smelled like weed and [Antonetti] had a lot of prior drug arrests. *Id.* at 32–33; Video at 15:00.

10. Officer DeAngelo testified that the conversations with [Antonetti] were polite and conversational. When they approached [Antonetti's] Camry after the initial check, Officer Jones was on the passenger side of the vehicle and Officer DeAngelo returned to the driver's side. The officers did not draw their weapons or make any threats or show of force. Up until this point in time, the officers had not physically touched [Antonetti] or directed his movements in any way. N.T., 4/8/24, at 17–20.

11. When [Antonetti] stepped out of the Camry to show Officer DeAngelo the faulty brake light connection, Officer DeAngelo saw a marijuana blunt in plain view on the driver's side floor board. When asked if he possessed a medical marijuana card, [Antonetti] replied that he did not possess one and acknowledged the marijuana blunt on the floor, stating that he is an avid marijuana user. *Id.* at 15, 21–22; Video at 15:01.

12. By this time, Officer DeAngelo suspected that there was illegal marijuana in the car and asked [Antonetti] for his consent to search the Camry. Specifically, the Officer asked [Antonetti] to step up on the curb and requested consent to search "to make sure there's no other marijuana in the car." After initially giving his consent, [Antonetti] asked "for marijuana?" to which the Officer replied "yes." N.T., 4/8/24, at 15, 22, 34–35; Video at 15:01.

13.   The Officer admittedly did not fill out a written consent to search form for [Antonetti's] signature or advise him that he had the right to refuse consent, or that he could withdraw his consent at any time.  N.T., 4/8/24, at 34.

14.   Officer DeAngelo testified that [Antonetti] did not appear to be under the influence of any drugs or alcohol and his judgment did not appear to be impaired in any way.  [Antonetti] understood English and was appropriately answering the Officer's questions.  *Id.* at 22–23.

15.   Officer DeAngelo testified that, once he has consent to search a vehicle for drugs, he will search any compartments within the vehicle that could contain drugs, including doorjambs, spaces between seats, articles of clothing, [and any] place where one may place a small object such as drugs.  The Officer does not typically break any locks or pry open any compartments that are glued shut and did not do so in this case.  *Id.* at 23–24; Video.

16.   Officer DeAngelo conducted a systematic search from the driver's side front to back and then passenger side front to back.  The Officer recovered the marijuana blunt from the driver's side floor that he had previously seen in plain view, as well as bags consistent with marijuana packaging in the center cross armrest, and underneath some black clothing in the rear passenger seat he observed a black plastic bag that held four clear bags containing marijuana and eight green plastic vials of marijuana.  N.T., 4/8/24, at 25–26.

17.   Because the drugs were packaged in such a way that was consistent with distribution, Officer DeAngelo handcuffed [Antonetti] to maintain control of the scene.  The Officer testified that, although [Antonetti] was not under arrest at that time, he was detaining [Antonetti] until he had completed his search of the vehicle.  The Officer then asked [Antonetti] if he was more comfortable standing on the sidewalk where he could observe or sitting in the back of the patrol vehicle out of the public's eye.  [Antonetti] stated that he wanted to stand next to Officer Jones and watch.  *Id.* at 26–27, 36; Video at 15:04.

18.   Officer DeAngelo resumed the search, lifting the removable tray in the center console and discovered a silver and black Kel-tec 9mm firearm, two magazines, and thirty-eight rounds of ammunition.   N.T. 4/8/24, at 28–29; Video at 15:07; Commonwealth Exhibit C-2 (firearm and magazines).

19. Officer DeAngelo testified that the firearm, magazines, and ammunition were in a compartment that he did not have to pry open and could have contained drugs. N.T., 4/8/24, at 29.

20. After Officer DeAngelo had discovered the firearm, additional law enforcement officers arrived on the scene for a total of four, including one sergeant. *Id.* at 36; Video at 15:12.

21. At this point, Officer DeAngelo had [Antonetti] go to the back of the patrol vehicle and placed him in the backseat under arrest. After approximately thirty minutes from the initial stop, Officer DeAngelo completed his search and went to the back of his patrol vehicle to briefly respond to [Antonetti's] questions.

*See* Findings of Fact and Conclusions of Law, 8/27/24, at 1–6 (lightly edited for clarity). The trial court denied suppression, concluding that Antonetti gave valid consent for Officer DeAngelo to search his car and that Officer DeAngelo's search was within the scope of Antonetti's consent. *Id.* at 15–16.

Antonetti waived his right to a jury trial, and the case proceeded to a bench trial on September 20, 2024. N.T., 9/20/24, at 5–9. The parties stipulated to the affidavit of probable cause, which was consistent with Officer DeAngelo's suppression hearing testimony. *See id.* at 10–12. The parties stipulated that Michael Reynolds, from the Montgomery County Detectives Bureau, would offer an expert opinion that the marijuana from the car was possessed with intent to deliver. *Id.* at 12–13. He would base his opinion on three factors:

The quantity of the marijuana, which was a total of 93.35 grams, plus or minus 0.24 grams.

The way the marijuana was packaged, specifically the different sizes of packaging, and the multiple different packages of the same type of marijuana.

> The unused baggies that were recovered with the marijuana, which Detective Reynolds would opine is packaging material for street level sales, and the presence of the firearm, which Detective Reynolds would opine, is the "tool of the trade." And that people who sell drugs oftentimes have guns to protect their product and money surrounding their drug sales.

*Id.* at 13.

Antonetti testified on his own behalf. He stated that he purchased the used 2004 Camry in May of 2021, but that it was stolen on May 1, 2021. *Id.* at 18. Antonetti explained that he reported the theft to the police; the theft report was admitted into evidence. *Id.* at 19. Antonetti testified that the police returned the Camry to him about five to six weeks later. *Id.* at 20. Antonetti did not dispute that he was told the car was recovered two days after it was stolen or that he had the car for the two years between the return of the car and this incident. *Id.* at 20–21.

After briefing, on October 9, 2024, the trial court found Antonetti guilty of the above offenses. The court sentenced Antonetti on December 3, 2024, to an aggregate term of nine and a half to nineteen years of imprisonment. Antonetti filed a post-sentence motion the same day. Antonetti filed an amended post-sentence motion on February 27, 2025. The trial court denied both motions on March 25, 2025. Antonetti timely appealed on April 2, 2025. Antonetti and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.[2]

---

[2] Judge Thomas Rogers, who presided over Antonetti's suppression hearing, trial, and sentencing, retired at the end of 2024. Judge Thomas DelRicci assumed the case and authored the Rule 1925(a) opinion.

Antonetti presents six questions for review:

1. Should [Antonetti's] Motion to Suppress have been granted because the police failed to comply with the rules governing consent searches and [Antonetti's] consent to search the vehicle was not knowing, intelligent or voluntarily given?

2. Should [Antonetti's] Motion to Suppress have been granted because the police exceeded the scope of consent if any was given in their search of the vehicle[?]

3. Did the evidence presented at trial fail to prove beyond a reasonable doubt that [Antonetti] possessed the firearm in actuality or constructively, and therefore was the evidence insufficient to support [Antonetti's] conviction for Violation of the Uniform Firearms Act § 6106(a)(1) and § 6105(a)(1)?

4. Does 18 Pa.C.S. § 6105(a)(1) violate the United States and Pennsylvania Constitutions as applied to [Antonetti] and did the trial court err in convicting [Antonetti] of Violation of the Uniform Firearms Act § 6105(a)(1) because the Commonwealth presented evidence that [Antonetti] has a prior conviction for Possession with Intent to Distribute a Controlled Substance, which is not a violent felony and therefore does not make [Antonetti] ineligible to possess a firearm? *See Commonwealth v. Anderson*, 1370 EDA 2022[, 2024 WL 5205507] (Pa. Super. 2024) [(non-precedential decision)].

5. Was the evidence presented at trial insufficient to establish that the 93.35 grams of marijuana recovered in this case was possessed with the intent to distribute when [Antonetti] was not observed engaging in any narcotics sales, [Antonetti] admitted to being an avid marijuana smoker and a marijuana blunt, indicative of personal use, was found in [Antonetti's] vehicle?

6. Did the [trial court] abuse its discretion in imposing an unduly harsh sentence of 9 ½ to 19 years [of] incarceration[?]

Antonetti's Brief at 4–5 (reordered).

We first address Antonetti's suppression issues. Antonetti argues that the Commonwealth did not prove that he validly consented to a search of his

car or that the search of the compartment under the center console tray was within the scope of his consent.[3]

We review a suppression ruling to determine whether the findings of fact are supported by the record and whether the legal conclusions drawn from those facts are correct. *Commonwealth v. Rosendary*, 313 A.3d 236, 240–41 (Pa. Super. 2024) (citations omitted). The scope of our review is the record of the suppression hearing. *Id.*

The Constitutions of the United States and of Pennsylvania prohibit unreasonable searches; a warrantless search "is presumptively unreasonable" unless it falls under one of "a few specifically established, well-delineated exceptions" to the warrant requirement. *Commonwealth v. Saunders*, 326 A.3d 888, 896 (Pa. 2024) (citations omitted). Relevant here is the exception for valid consent, which "must be voluntarily given, and not the result of duress or coercion, express or implied." *Commonwealth v. Hunte*, 337 A.3d 483, 498 (Pa. 2025) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49 (1973)). The Commonwealth must prove that an individual's consent was voluntary based on the totality of the circumstances. *Commonwealth v. Hawkins*, 257 A.3d 1, 9–10 (Pa. Super. 2020) (citations omitted).

> [A]lthough the inquiry is an objective one, the maturity, sophistication and mental or emotional state of the defendant (including age, intelligence and capacity to exercise free will), are to be taken into account.

---

[3] Antonetti combines the two suppression issues in his brief. Antonetti's Brief at 36–50.

Since both the tests for voluntariness and for a seizure centrally entail an examination of the objective circumstances surrounding the police/citizen encounter to determine whether there was a show of authority that would impact upon a reasonable citizen-subject's perspective, there is a substantial, necessary overlap in the analyses.

... [T]he following factors outlined [in **Commonwealth v. Strickler**, 757 A.2d 884 (Pa. 2000),] are pertinent to a determination of whether consent to search is voluntarily given: 1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including its degree of coerciveness; 8) whether the person has been told that he is free to leave; and 9) whether the citizen has been informed that he is not required to consent to the search.

**Id.** (quoting **Commonwealth v. Kemp**, 961 A.2d 1247, 1261 (Pa. Super. 2008) (*en banc*)).

Importantly, although it is a factor whether the police inform the person that he can refuse consent, this advice is not required for the Commonwealth to prove the voluntariness of consent. **Id.** at 9; **accord Schneckloth**, 412 U.S. at 248–49. For example, in **Kemp**, the police were concluding a traffic stop when an officer asked the passenger if the vehicle contained "guns, drugs, or money." **Kemp**, 961 A.2d at 1252. The officer asked if he could look inside the vehicle, but he did not tell the passenger that he could withhold consent. **Id.** This Court balanced the **Strickler** factors to rule that the passenger's subsequent consent to search was voluntary: although the officer did not inform the passenger that he could refuse consent, the other factors

- 9 -

all weighed in favor of a finding that the passenger's consent was voluntary and not the product of coercion. *Id.* at 1261.

Once a person has voluntary consented to a search, "the ensuing search must be conducted within the scope of that consent." *Commonwealth v. Valdivia*, 195 A.3d 855, 862 (Pa. 2018). The applicable standard is "objective reasonableness," which limits the scope of the search to that which "the typical reasonable person would have understood by the exchange between the officer and the suspect." *Id.* (citing *Florida v. Jimeno*, 500 U.S. 248, 251 (1991), and *Commonwealth v. Reid*, 811 A.2d 530, 549 (Pa. 2002)). Although "general consent to search a vehicle extends to closed, but readily opened, containers discovered inside the car," it does not extend to "a hidden compartment" kept locked and concealed from view that could only be opened by removing a passenger door and applying power to wires connected to the door. *Commonwealth v. Randolph*, 151 A.3d 170, 185 (Pa. Super. 2016) (contrasting *Commonwealth v. Yedinak*, 676 A.2d 1217, 1220 (Pa. Super. 1996)).

Here, as the court noted in denying suppression, Officer DeAngelo did not inform Antonetti that he was free to leave or could refuse consent to the search. Findings of Fact and Conclusions of Law, 8/27/24, at 15–16. However, the remaining factors weigh in favor of the suppression court's finding that Antonetti's consent was voluntary. As the court noted, there were only two police officers, there was no physical contact, Officer DeAngelo did not direct Antonetti's movements, the interaction was polite, Antonetti did not

appear to be impaired, the police questions were standard and related to the traffic stop, and the character of the initial investigative detention was conversational. *Id.* 15. Furthermore, the traffic stop and ensuing detention were valid based on Antonetti's Vehicle Code violations and the presence of a marijuana blunt without a medical marijuana card. We therefore reach the same conclusion as the suppression court: Antonetti's consent was voluntary and not the result of duress or coercion. *See Kemp*, 961 A.2d at 1261.

As to the scope of Antonetti's consent, the record supports the findings of fact as to the exchange between Officer DeAngelo and Antonetti. After Officer DeAngelo smelled marijuana and saw the blunt, he asked to search "to make sure there's no other marijuana in the car." Antonetti agreed and asked, "For marijuana?" Officer DeAngelo replied, "Yes." From this interaction, we agree with the suppression court that a reasonable person would understand that Antonetti consented to a search of "anywhere marijuana could have been stored in the Camry." Findings of Fact and Conclusions of Law, 8/27/24, at 16. As Officer DeAngelo testified, the "removable" "coin tray" in the center console covered a compartment that was large enough to hold drugs. N.T., 4/8/24, at 28–30. This covered compartment is analogous to a "closed, but readily opened" container that is within the scope of general authorization to search a vehicle. *Yedinak*, 676 A.2d at 1220. The search, including removing the tray, was therefore within the scope of Antonetti's consent. Antonetti's suppression issues fail.

We next address Antonetti's challenge to the sufficiency of the evidence to sustain his firearm convictions. Antonetti argues the trial court could not reasonably conclude that he actually or constructively possessed the gun found in the compartment under the center console tray, as another person could have placed the gun there before Antonetti purchased the Camry or while the Camry was stolen.

For a sufficiency challenge, our standard of review recognizes that a fact-finder may draw reasonable inferences from the trial evidence and that those inferences may support a conviction:

> We must determine whether the evidence at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless it is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Mobley*, 14 A.3d 887, 889–90 (Pa. Super. 2011) (quoting *Commonwealth v. Mollett*, 5 A.3d 291, 313 (Pa. Super. 2010)). Notably, however, "a criminal conviction cannot be based upon mere speculation and conjecture." *Commonwealth v. Duncan*, 314 A.3d 556, 565 (Pa. Super.

- 12 -

2024) (quoting *Commonwealth v. Jarman*, 601 A.2d 1229, 1231 (Pa. 1992)).

The firearms convictions that Antonetti challenges can be sustained with proof that Antonetti "possessed" a firearm and "carried" it in a vehicle. 18 Pa.C.S. §§ 6105(a)(1), 6106(a)(1); *see Commonwealth v. Smith*, 234 A.3d 576, 584 (Pa. 2020) (opining that proof of possession for Section 6106 satisfies the element of possession under Section 6105); *see also Commonwealth v. Muhammad*, 335 A.3d 1047, 1053–54 (Pa. 2025) (illustrating the distinction between the statutes' prohibited actions).

If a person does not physically possess contraband, the Commonwealth may prove possession under a theory of constructive possession:

> Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. *Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013) (conviction under 18 Pa.C.S. § 6106(a) supported by a finding of constructive possession). Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> It is well established that, "[a]s with any other element of a crime, constructive possession may be proven by circumstantial evidence." *Commonwealth v. Haskins*, 677 A.2d 328, 330 (Pa. Super. 1996). In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

*Commonwealth v. Parrish*, 191 A.3d 31, 36–37 (Pa. Super. 2018) (some citations and quotations omitted). Constructive possession requires proof of more than "a defendant's mere presence at a place where contraband is found or secreted." *Id.* at 37 (citing *Commonwealth v. Valette*, 613 A.2d 548, 551 (Pa. 1992)).

Here, Antonetti was more than just present in the car where Officer DeAngelo found the gun. Antonetti was the car's sole occupant and driver, who owned the car for nearly two years between the time he purchased it and the day of the traffic stop. Although it was undisputed that Antonetti's car was stolen and missing for several days in May of 2021, the trial court as finder of fact could reasonably conclude that it was Antonetti who placed the gun in the compartment under the center console tray. The court could reason that the prior owners who sold the car and the thief who abandoned it would not leave their property in the compartment. Furthermore, in the weeks the car remained with the police before it was returned to Antonetti, the police could have searched the accessible areas just as easily as Officer DeAngelo did when he looked for marijuana. Likewise, the trial court could discredit Antonetti's seemingly innocent behavior given that Antonetti also would have known about the blunt, the large amount of marijuana, and the packaging materials that were also in the car. The trial court thus had substantial circumstantial evidence beyond mere speculation and conjecture to support a finding that Antonetti knew about the gun and had the power and intent to control it. Antonetti's sufficiency challenge to his firearms convictions fails.

We briefly address Antonetti's constitutional challenge to Section 6105 as applied to a person with a prior "non-violent felony" of possession with intent to deliver a controlled substance. Recent mandatory authority precludes relief. ***Commonwealth v. Randolph***, 343 A.3d 1248, 1259 (Pa. Super. 2025) (rejecting a similar claim as to a prior conviction for possession with intent to deliver).[4] This issue fails.

We next address Antonetti's challenge to the sufficiency of the evidence to sustain his conviction for possession of marijuana with intent to deliver. He argues that his possession of a marijuana blunt and his statement that he is an avid marijuana smoker both indicate that the 93 grams of marijuana in the back of his car were for personal use.

For the crime of possession with intent to deliver, the Commonwealth must prove the intent to deliver a controlled substance. ***Commonwealth v. Bernard***, 218 A.3d 935, 943 (Pa. Super. 2019) (citing ***Commonwealth v. Roberts***, 133 A.3d 759, 767 (Pa. Super. 2016)). This element requires an analysis of the circumstances surrounding the possession. ***Id.***

> The intent to deliver may be inferred from possession of a large quantity of controlled substances. It follows that possession of a small amount of a controlled substance supports the conclusion that there is an absence of intent to deliver. If the quantity of the

---

[4] The appellant in ***Randolph*** filed a petition for allowance of appeal, which the Supreme Court of Pennsylvania held pending disposition of two other appealed cases with defendants to whom Section 6105 applied for different reasons: ***Commonwealth v. Farmer***, 41 MAP 2025 (prior conviction for robbery), and ***Commonwealth v. Jenkins***, 42 MAP 2025 (fugitive from justice). ***Commonwealth v. Randolph***, Order at 217 WAL 2025 (Pa. Jan. 23, 2026)

controlled substance is not dispositive as to the intent, the court may look to other factors.

Other factors to consider when determining whether a defendant intended to deliver a controlled substance include the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and the sums of cash found in possession of the defendant. The final factor to be considered is expert testimony. Expert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use.

*Id.* (quoting *Roberts*, 133 A.3d at 768).

Here, the trial court had ample evidence to conclude that Antonetti had the intent to deliver the marijuana he possessed. In addition to the marijuana in Antonetti's blunt being kept separate from the marijuana in the back of the car, Antonetti also possessed a variety of packaging materials. The parties stipulated that Detective Reynolds would opine that the quantity of marijuana, the different packages of marijuana, and the presence of a firearm all indicate that the marijuana was possessed with intent to deliver. The trial court could credit this evidence to find that the Commonwealth proved Antonetti's intent. This issue fails.

Last, we address Antonetti's challenge to the discretionary aspects of his sentence. Antonetti argues he received an unduly harsh 9½–19-year sentence, and the sentencing court failed to consider mitigating factors: he successfully completed Quehanna Boot Camp in 2013, he was a law-abiding member of society for ten years before this incident, he was gainfully

employed for five years, and he was expecting his first child at the time of sentencing.

A party challenging the discretionary aspects of a sentence must satisfy a four-part test to invoke this Court's jurisdiction:

> We conduct a four-part analysis to determine: (1) whether the appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether the appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b).
>
> Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. **Commonwealth v. Mann**, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).

**Commonwealth v. Bradley**, 237 A.3d 1131, 1138 (Pa. Super. 2020) (quoting **Commonwealth v. Griffin**, 65 A.3d 932, 935 (Pa. Super. 2013)) (brackets and internal citations omitted).  By preserving the sentencing issue that is contested on appeal, an appellant thereby "give[s] the sentencing judge an opportunity to reconsider or modify his sentence on that basis." **Mann**, 820 A.2d at 794.  An appellant thus waives a discretionary sentencing claim if he does not present the specific issue for the sentencing court to resolve in the first instance.  **Id.** (citing Pa.R.A.P. 302).  Furthermore, if an appellant presents a discretionary sentencing claim "in a vague manner in his [Rule] 1925(b) statement," and the trial court therefore does not address the

precise claim argued on appeal, this hinders meaningful appellate review. *Id.* (citations omitted).

Here, Antonetti did not object at sentencing to the court's failure to consider any factors in mitigation. The relevant portion of Antonetti's post-sentence motion provided only: "The sentence is an abuse of discretion." Post-Sentence Motion, 12/3/24, at 2 ¶10. Likewise, the sentencing issue in Antonetti's Rule 1925(b) statement asked: "Whether the Court abused its discretion in imposing an unduly harsh sentence of 9 ½ to 19 years incarceration." Statement of Matters Complained of on Appeal, 4/7/25, at 2 ¶6. Not until the argument section (and the Rule 2119(f) statement) of Antonetti's brief did he articulate his complaint that the sentencing court did not consider his mitigating factors. This was too late for the sentencing court to alter Antonetti's sentence or for the court to address the mitigation issue in its Rule 1925 opinion. Therefore, Antonetti failed to preserve his discretionary sentencing issue.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/2/2026

- 18 -