606 A.2d 529

**COMMONWEALTH of Pennsylvania**

v.

**Tamara Sue OSBORNE, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 3, 1992.

Filed April 23, 1992.

Petition for Allowance of Appeal Denied Sept. 10, 1992.

James M. Goodwin, Asst. Public Defender, Sharon, for appellant.

Robert G. Kochems, Asst. Dist. Atty., Media, for Com., appellee.

Before ROWLEY, President Judge, and FORD ELLIOTT and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from the judgment of sentence entered after a jury convicted appellant, Tamara Sue Osborne, (Ms. Osborne), of driving a vehicle while her blood alcohol content (BAC) was 0.10 percent or greater in violation of 75 Pa.C.S.A. § 3731(a)(4).[1] Ms. Osborne was sentenced to a term of imprisonment of thirty days to three months, to the payment of a fine in the amount of three hundred dollars ($300.00) and to a license suspension of one year.

On appeal, Ms. Osborne raises the following issues: (1) That it was error to admit the testimony of a State Trooper concerning the horizontal gaze nystagmus (HGN) test; and (2) that the verdict was against the weight of the evidence in that (a) no evidence was presented to demonstrate that the testing equipment was properly checked and (b) no evidence was presented relating the BAC test result back to the time when Ms. Osborne was driving on the night in question.[2]

1. Ms. Osborne was also charged with but was acquitted of violating the impaired driving provision of the Motor Vehicle Code, 75 Pa.C.S.A. § 3731(a)(1).

2. Ms. Osborne miscasts the contentions comprising her second issue as weight of the evidence claims. It is apparent from a reading of her argument, however, that she is actually attacking the sufficiency of the evidence of her blood alcohol count at the time when she was driving to warrant a conviction under 75 Pa.C.S.A. § 3731(a)(4) and that the Commonwealth produced no evidence demonstrating that the equipment used to test the blood sample drawn from her was operating properly on the night in question.

We are constrained to vacate the judgment of sentence since the law of this Commonwealth, as recently announced by our supreme court, requires the relating back of a BAC test result to the time of driving.

In *Commonwealth v. Jarman,* 529 Pa. 92, 601 A.2d 1229 (1992), and *Commonwealth v. Modaffare,* 529 Pa. 101, 601 A.2d 1233 (1992), our supreme court vacated the judgments of sentence on the basis that the statute in question, 75 Pa.C.S.A. § 3731(a)(4), requires the relation back of a BAC test result to the time when the accused was driving. This statutory provision reads: "Driving under the influence of alcohol or controlled substance (a) Offense defined.—A person shall not drive, operate or be in actual physical control of the movement of any vehicle *while:* (1) * * *; (2) * * *; (3) * * *; (4) the amount of alcohol by weight in the blood of the person is 0.10% or greater." Emphasis supplied.

The court held in those cases that relating back a BAC test result to the time when an accused was driving is mandated by the plain language of the statute, since, by its very terms, a violation occurs only when a person's BAC is equal to or exceeds 0.10 percent *while* he/she is driving. The supreme court compared the statutory language of Section 3731(a)(4) with language from statutes of other jurisdictions which substitute the phrases "as shown by" or "as determined by" for the word "while" and replace the phraseology of subsection (a)(4) with language reading "as shown by" or "as determined by" "a blood alcohol test administered [within a specified time] *after* driving has ceased." *Jarman, supra,* 529 Pa. at ——, 601 A.2d 1229 at 1230; *Modaffare, supra,* 529 Pa. at ——, 601 A.2d 1233 at 1235. Emphasis in texts. The court then aptly summarized its position as follows:

Under such statutes [from other jurisdictions], the facts of the present case might readily support a conviction.[1] Our statute, however, is more limited in its focus. It

makes one's blood alcohol content *while* driving the pivotal issue.

[1] Arguably, statutes such as these [from other jurisdictions] may be more responsive to societal concerns about drunk driving, making it easier to obtain convictions. Such arguments could properly be addressed to our legislature, rather than to this Court, for we are constrained to apply the plain language of the existing statute.

*Jarman, supra,* 529 Pa. at ——, 601 A.2d 1229 at 1230; *Modaffare, supra,* 529 Pa. at ——, 601 A.2d 1233 at 1235. Emphasis in texts.

We note that the BACs of both Mr. Jarman and Mr. Modaffare tested minimally above 0.10 percent. Mr. Jarman's BAC test result was 0.104 percent, while Mr. Modaffare's result read 0.108 percent. One hour had elapsed between the time when Mr. Jarman was stopped for a burned-out light bulb and the time when a sample of his blood was drawn at the hospital. Approximately two hours had passed between the time when Mr. Modaffare struck a parked car and when a sample of his blood was drawn for the purpose of determining the presence of alcohol therein.

At Mr. Jarman's trial, an expert witness, the director of the laboratory of the hospital where the blood had been drawn, offered uncontradicted testimony on behalf of the Commonwealth that a ten percent margin of error exists with respect to the hospital blood testing equipment and that an individual's BAC usually peaks approximately sixty to ninety minutes after drinking terminates. The witness opined that because of this, Mr. Jarman's BAC was probably still rising at the time of the blood withdrawal and may not have reached even 0.10 percent at the time when he was driving. Therefore, the court concluded that no evidence existed that Mr. Jarman's BAC equalled or exceeded 0.10 percent at the time when he was driving.

In Mr. Modaffare's case, the Commonwealth offered the uncontradicted testimony of the physician who drew the blood that a person's BAC peaks approximately one hour after cessation of drinking and then declines. This witness further opined that when Mr. Modaffare's blood was drawn, his BAC was probably declining. The physician did concede upon cross-examination, however, that Mr. Modaffare's BAC may have peaked between the time of the accident and the time when the blood sample was taken. As in *Jarman,*

the witness in *Modaffare* was unable to render an opinion as to whether Mr. Modaffare's BAC was 0.10 percent or greater at the time of the accident. Therefore, the evidence was insufficient to sustain Mr. Modaffare's conviction for violation of 75 Pa.C.S.A. § 3731(a)(4).

The supreme court in both cases held that a strong inference of guilt due to an illegal BAC while the accused is driving would exist where the BAC test result significantly departed above 0.10 percent and where a blood sample had been obtained a short time after the accused had been stopped by the police. Otherwise, as in *Jarman* and *Modaffare*, where the respective BAC test results had minimally exceeded 0.10 percent and where the suspects' blood samples had been drawn shortly after they were stopped by the authorities, this inference is considerably weakened.

■ However, the supreme court did not draw a bright numerical line between what it would consider to be a minimal upward departure suggesting a weak inference of guilt and what would constitute a significant upward deviation which would give rise to a strong inference of guilt. In like vein, the supreme court failed to establish a temporal cut-off for the drawing of a suspect's blood to indicate either a weak or a strong inference of guilt. In our view, and in accordance with the dual standards set by our supreme court in *Jarman* and *Modaffare*, the stronger the inference of guilt, the less significant is the necessity for evidence of relating back. Conversely, the weaker the inference of guilt, the more vital is the necessity for evidence of relating back an accused's BAC test result to the time of driving.

■ Lacking any brightline numerics from our high court in this regard, we must conclude that the absence of evidence relating back Ms. Osborne's BAC test result to the time when she was driving weakens the inference of her guilt. Ms. Osborne's BAC was determined to be 0.1488 percent when she was tested at the hospital. We deem this reading to be not a substantial departure from 0.10 percent.

As to the temporal sequence of events, Ms. Osborne was stopped by Trooper Whalen at approximately 10:15 p.m. and was transported to Sharon Regional Hospital where, at approximately 11:05 p.m., a sample of her blood was drawn for BAC testing purposes. We would also consider the lapse of time of approximately fifty minutes a significant factor weakening the inference of guilt because Ms. Osborne testified, without contradiction, that she had stopped drinking beer at her home at approximately 9:30 p.m. She then drank another half can of beer with her boyfriend at his place of employment at approximately 10 p.m., a mere fifteen minutes before she was stopped by Trooper Whalen. Therefore, it is probable that Ms. Osborne's BAC was still rising at 11:05 p.m. when she was having her blood sample drawn at Sharon Regional Hospital and that, consequently, her BAC at the time of driving at 10:15 p.m. may have been below 0.10 percent.

This being the case, the jury was left to impermissibly speculate upon Ms. Osborne's actual BAC at the time when she was driving, especially since the Commonwealth failed to introduce any expert witness who was able to relate back the result of the BAC test to Ms. Osborne's actual BAC at the time when she was driving on the night in question. *Commonwealth v. Jarman, supra.* The witness whom the Commonwealth did produce was the laboratory technician who tested Ms. Osborne's blood sample. This witness testified that he was not trained to determine the absorption rate of alcohol into the bloodstream.

The circumstances of this case illustrate the necessity of producing evidence relating back the BAC test result to the time when the accused was driving to sustain the Commonwealth's burden of proving beyond a reasonable doubt that he/she "dr[o]ve ... while[ ] ... the amount of alcohol by weight in [his/her] blood [was] 0.10% or greater." Given the lack of any evidence attempting to relate back Ms. Osborne's BAC test result to the time when she was driving, we conclude, with constraint, but pursuant to our supreme court's directive in *Commonwealth v. Jarman,*

*supra,* and in *Commonwealth v. Modaffare, supra,* that the judgment of sentence must be vacated and that Ms. Osborne must be discharged from criminal liability.[3]

Judgment of sentence vacated; appellant discharged.[4]

ROWLEY, J., concurs in the result.

**3.** Ms. Osborne is entitled to the benefit of the supreme court's rulings in *Commonwealth v. Jarman, supra in text,* and in *Commonwealth v. Modaffare, supra in text,* because she has properly preserved the issue of relation back through all stages of the proceedings where this issue could have been raised. *See Commonwealth v. Sessoms,* 516 Pa. 365, 532 A.2d 775 (1987) and *Commonwealth v. Cabeza,* 503 Pa. 228, 469 A.2d 146 (1983).

**4.** In light of our disposition, we deem it unnecessary to address the remaining issues of the admissibility of Trooper Whalen's testimony concerning the HGN test and whether sufficient evidence existed to demonstrate that the testing equipment used to analyze Ms. Osborne's blood sample was operating properly on the evening in question.