**COMMONWEALTH of Pennsylvania**

v.

**John Henry CURRAN, II, Appellant.**

Superior Court of Pennsylvania.

Submitted July 14, 1997.

Filed Sept. 29, 1997.

Richard E. Goldinger, Public Defender, for appellant.

George R. Kepple, District Attorney, Kittanning, for Commonwealth, appellee.

Before EAKIN, SCHILLER and OLSZEWSKI, JJ.

OLSZEWSKI, Judge.

John Henry Curran, II, appeals from the November 26, 1996, judgment of sentence imposed after a jury found him guilty of driving while under the influence of alcohol, 75 Pa.C.S.A. § 3731(a)(1), and homicide by vehicle while driving under the influence, 75 Pa.C.S.A. § 3735. After a careful review of the record, we affirm.

Sometime after 2:00 A.M. on the morning of January 21, 1996, Curran drove his Ford pickup truck across the center line of a two-lane highway and slammed head-on into an oncoming vehicle. The driver of the other vehicle was pronounced dead at the scene. Curran was transported to a nearby hospital to be treated for his injuries. Pennsylvania State Trooper Joseph P. Murphy testified that he arrived at the hospital at 5:45 A.M. and spoke with Curran regarding how the accident occurred. During their conversation, Officer Murphy testified that Curran's breath smelled of alcohol, his speech was slurred and his eyes were bloodshot and glassy. After Curran admitted to having "had a couple beers," Officer Murphy placed him under arrest for driving while under the influence of alcohol in violation of 75 Pa. C.S.A. § 3731(a)(1).[1] The lawman requested that blood be drawn for the purpose of performing a blood alcohol content (BAC) test and was informed that such a test had been performed at 3:55 A.M., less than two hours after the accident. The test results reflected a BAC of .24%. Curran now challenges the introduction into evidence of the BAC test results "without expert testimony to relate back the blood alcohol content to the time [he] was driving." Appellant's brief at 3.

In presenting his argument, Curran correctly notes that in *Commonwealth v. Jarman,* 529 Pa. 92, 601 A.2d 1229 (1992) and *Commonwealth v. Modaffare,* 529 Pa. 101, 601 A.2d 1233 (1992), our Supreme Court vacated judgments of sentence on the basis that 75 Pa.C.S.A. § 3731(a)(4)[2] requires the relation back of a BAC test result to the time when the accused was driving. In so holding, the court explained that § 3731(a)(4) is "limited in its focus" as "[i]t makes one's blood alcohol content **while** driving the pivotal issue." *Modaffare, supra* at 104, 601 A.2d

---

1. Section 3731(a)(1) states that "[a] person shall not drive, operate or be in actual physical control of the movement of any vehicle while driving under the influence of alcohol to a degree which renders the person incapable of safe driving."

2. Section 3731(a)(4) states that "[a] person shall not drive, operate or be in actual physical control of the movement of any vehicle while the amount of alcohol by weight in the blood of the person is 0.10% or greater."

at 1235 (emphasis original); *Jarman, supra* at 94–96, 601 A.2d at 1230 (emphasis original). The Court focused upon the testimony of the Commonwealth's experts who stated, in each case, that "a person's blood alcohol level fluctuates with the passage of time, such that the level gradually rises after drinks have been consumed until a peak is reached roughly one hour after the drinking has ceased, and that, thereafter, the level declines." *Modaffare, supra* at 105, 601 A.2d at 1235. *See Jarman, supra* at 96–98, 601 A.2d at 1231. The Court reasoned:

> The legislature has provided that blood tests conducted after suspected drunk drivers have been stopped will be used as evidence of the suspects' blood alcohol contents while driving. See generally 75 Pa. C.S. § 1547 (chemical testing to determine amount of alcohol). In cases where test results show levels of alcohol significantly above 0.10% and where blood samples have been obtained soon after suspects have been driving, there is a very strong inference that blood alcohol levels were in the prohibited range while driving. However, where, as in the present case, the blood alcohol test result barely exceeded the 0.10% level and the lapse of time between driving and the taking of the blood sample was significant, the inference is weakened.

*Modaffare, supra* at 105, 601 A.2d at 1235. *See Jarman, supra* at 96, 601 A.2d at 1230–31. The Supreme Court concluded that, in cases where the inference is weak, the Commonwealth must present expert testimony relating the BAC test result back to the time at which the suspect was actually driving. Without this testimony, the suspect's BAC could have been below 0.10% when he/she was driving and could have simply increased above the 0.10% threshold because of alcohol being absorbed into the suspect's blood during the delay prior to testing. Consequently, the BAC test result alone would only enable the jury to "engage in unbridled speculation as to whether appellant's blood alcohol level was at or above 0.10% at the critical time." *Jarman, supra* at 97, 601 A.2d at 1231. *See Modaffare, supra* at 106–07, 601 A.2d at 1236.

Instantly, however, the Commonwealth pursued prosecution under § 3731(a)(1) of the Vehicle Code and not under § 3731(a)(4). Nevertheless, Curran sees no differentiation between these two subsections and asks us to require expert relation back testimony in all DUI cases. We decline. It is well-settled that

> [t]here exists both statutory and case law authority ruling that blood alcohol content results are admissible in section 3731(a)(1) cases. Specifically, it has been determined that, "[I]n a § 3731(a)(1) prosecution, so long as the defendant's alcohol level exceeds .05%, the Commonwealth may introduce evidence regarding that defendant's blood alcohol level." *Commonwealth v. Kemble,* 413 Pa.Super. 521, 526, 605 A.2d 1240, 1242 (1992) (citing *Commonwealth v. Gonzalez,* 519 Pa. 116, 546 A.2d 26 (1988)), [alloc. denied, 532 Pa. 651, 615 A.2d 340 (1992) ]; *see* 75 Pa.C.S.A. § 1547(d)(2), (3).

*Commonwealth v. Kelley,* 438 Pa.Super. 289, 295, 652 A.2d 378, 381 (1994). *See Gonzalez, supra* at 132–34, 546 A.2d at 34

Moreover, "[s]ubsection (a)(1) is a general provision and provides no restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving." *Commonwealth v. Loeper,* 541 Pa. 393, 403, 663 A.2d 669, 674 (1995). As such, a defendant may be convicted under this subsection "despite the fact that the defendant's blood-alcohol level could not be related back to the time of the defendant's driving." *Commonwealth v. Weiss,* 416 Pa.Super. 623, 640, 611 A.2d 1218, 1227 (1992) (citing *Gonzalez, supra* at 135, 546 A.2d at 35).

In light of the above Supreme and Superior Court decisions, which hold that no expert relation back testimony is needed in a prosecution under 75 Pa.C.S.A. § 3731(a)(1), we find that Curran's argument on appeal is baseless.

Before concluding, however, we note that the Commonwealth is not unrestricted in presenting BAC test results in subsection (a)(1) cases. This Court has held:

> "Whether the time intervening between [arrest] and withdrawal of blood was so

great as to render the results inadmissible on grounds of relevancy required the exercise of discretion by the trial court." *Commonwealth v. Kostra*, 349 Pa.Super. 89, 99, 502 A.2d 1287, 1292 (1985).... "So long as a blood test is indicative of a defendant's condition at a relevant time, it is admissible and subject to attack or contradiction by other competent evidence." *Commonwealth v. Arizini*, 277 Pa.Super. 27, 41, 419 A.2d 643, 650 (1980). The delay between the operation of the motor vehicle and the drawing of blood [goes] only to the weight of the evidence and not its admissibility. *Commonwealth v. Tylwalk*, 258 Pa.Super. 506, 510, 393 A.2d 473, 475 (1978).

*Commonwealth v. Romesburg*, 353 Pa.Super. 215, 222, 509 A.2d 413, 416–17 (1986).

Instantly, an uncontested BAC test result established that Curran's BAC was 0.24% less than two hours after the accident. This test result is clearly relevant as it shows that Curran's BAC was considerable at a time which was not so far removed from his accident as to render the results worthless. *See Gonzalez, supra* ("There is no question that the result of the chemical test of appellant's blood that showed .09 percentage three hours after the accident was admissible."); *Romesburg, supra* ("Although the blood sample was not taken until more than two hours after appellant had been stopped, the test result of .34 percent was clearly relevant to the issue of whether appellant was under the influence of alcohol while driving."); *Kostra, supra* (test results taken two hours after operation of motor vehicle relevant). Accordingly, we find that the trial court did not abuse its discretion in admitting appellant's BAC test result.

Judgment of sentence affirmed.

SCHILLER, J., filed a Concurring Opinion

SCHILLER, Judge, concurring:

The Supreme Court's Opinion in *Commonwealth v. Yarger*, 538 Pa. 329, 648 A.2d 529

(1994), supports the argument that blood alcohol evidence can be admitted without relating it back to the time of driving. However, the Court's decision was specifically based upon two facts: the defendant's blood alcohol was significantly higher than the 10% threshold, and the lapse of time between the taking of defendant's blood and his driving was only forty minutes.[1] *Id.* at 334, 648 A.2d at 531. Subsequent to *Yarger* the Supreme Court summarized the state of the law regarding relation back testimony, stating: "the stronger the inference of guilt, the less significant is the necessity for evidence of relating back. Conversely, the weaker the inference of guilt, the more vital is the necessity for evidence of relating back an accused BAC test result to the time of driving." *Commonwealth v. Loeper*, 541 Pa. 393, 398, 663 A.2d 669, 671 (1995), citing with approval *Commonwealth v. Osborne*, 414 Pa.Super. 124, 128, 606 A.2d 529, 531 (1992). However, as appellant argues, the Supreme Court has not determined what temporal threshold and what blood alcohol reading will relieve the Commonwealth of providing relation back testimony. Thus, courts are left without clear guidance: a result which will inevitably lead to inconsistent applications of the rule.

For instance, the defendant in the present case had a higher blood alcohol reading than the defendant in *Yarger*, but the lapse of time between appellant's driving and the taking of the blood was almost three times longer than in *Yarger*. At what point does one factor outweigh the other? Following the Supreme Court decisions in *Commonwealth v. Jarman*, 529 Pa. 92, 601 A.2d 1229 (1992), and *Commonwealth v. Modaffare*, 529 Pa. 101, 601 A.2d 1233 (1992), the Commonwealth should bear the burden of producing relation back testimony in all cases in which it seeks to introduce a blood/alcohol test result; otherwise, the result standing alone calls for the jury to make a scientific determination related to blood/alcohol absorption rate without an adequate foundation.

---

**1.** However, the Court in *Yarger* also took some support for its decision from the existence of subsection 5 of the drunk driving statute (75 Pa.C.S. § 3731(5)). See *Commonwealth v. Yarger*, 538 Pa. 329, 648 A.2d 529 (1994). That subsection has since been held unconstitutional. *See Commonwealth v. Barud*, 545 Pa. 297, 681 A.2d 162 (1996). Given that recent decision the Supreme Court may wish to revisit *Yarger*.

However, I agree with the majority's decision in this case in light of this Court's decision in *Commonwealth v. Weis*, 416 Pa.Super. 623, 611 A.2d 1218 (1992): although I am compelled to note that the decision in *Weis* relied upon a Supreme Court decision which was *not* precedential. *See Commonwealth v. Gonzalez*, 519 Pa. 116, 546 A.2d 26 (1988).[2] Nonetheless, the *Weis* Court regarded that decision as dispositive despite the decisions in *Commonwealth v. Jarman, supra,* and *Commonwealth v. Modaffare, supra.* Although I would not have put such an expansive reading on *Gonzalez,* we are nonetheless bound by the decision to do so.

---

**2.** The lead opinion in *Gonzalez* did not garner a majority of votes, and was merely an "Opinion Announcing the Judgment of the Court". *See Commonwealth v. Gonzalez*, 519 Pa. 116, 546 A.2d 26 (1988).