J-A11027-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON ROY KOCHER | : | |
| | : | |
| Appellant | : | No. 1247 MDA 2024 |

Appeal from the Judgment of Sentence Entered March 28, 2024
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0000914-2023

BEFORE: MURRAY, J., KING, J., and STEVENS, P.J.E.*

MEMORANDUM BY KING, J.: **FILED: JULY 24, 2025**

Appellant, Jason Roy Kocher, appeals from the judgment of sentence entered in the Luzerne County Court of Common Pleas, following his bench trial convictions for driving under the influence of alcohol ("DUI") and the summary Motor Vehicle Code offenses of careless driving and limitations on backing.[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows. On August 6, 2022, Appellant attended a can-release party hosted by Bearded Barrel Brewing in Plymouth.  Appellant arrived at noon and remained there for more than three hours.  Witnesses observed Appellant sitting in the same

---

* Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3802(a)(1), 3714(a), and 3702(a), respectively.

location during the entire time he was at the brewery event. When the party ended, Appellant walked to his vehicle, entered, and attempted to drive out of the parking lot. Appellant accelerated at a high speed and crashed through the wall of the brewery. Appellant then put the vehicle into reverse and drove backwards through the parking lot and onto Nottingham Street.

Plymouth Borough Police Officer Alexandra Baloga was dispatched and arrived at the scene minutes later. Officer Baloga spoke with Appellant and observed indicia of intoxication. During this interaction, Appellant informed Officer Baloga that he had been drinking. Before the officer could request field sobriety tests, Appellant indicated that he was injured during the crash. An ambulance arrived and transported Appellant to the hospital. Appellant subsequently left the hospital before Officer Baloga arrived, which prevented the officer from requesting a blood alcohol content test.

The Commonwealth filed a criminal information against Appellant on May 16, 2023. Following a bench trial, the court convicted Appellant of DUI and summary vehicle offenses. On March 28, 2024, the court sentenced Appellant to six (6) months of intermediate punishment, with the first ninety (90) days to be served on house arrest. Appellant timely filed a post-sentence motion on April 5, 2024. In it, Appellant argued that the verdict was against the weight of the evidence. Appellant also challenged the discretionary aspects of his sentence. On August 1, 2024, the trial court denied the post-sentence motion.

Appellant timely filed a notice of appeal on August 29, 2024. On September 4, 2024, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on September 25, 2024.

On appeal, Appellant raises three issues for this Court's review:

> Did the court below err when it first admitted and then considered during Appellant's non-jury trial, Appellant's extrajudicial statement indicating that he had been drinking (with that statement being precluded from admission and considering under Pennsylvania's *corpus delicti* rule) given the failure of the Commonwealth's non-confession evidence to establish that the crime of DUI had been committed by Appellant?

> Whether the [trial] court's finding of guilt for DUI was against the [sufficiency and] weight of the evidence when the Commonwealth did not prove beyond a reasonable doubt that Appellant was incapable of safely operating a motor [vehicle] by either a field sobriety test or chemical/blood tests?

> Was the sentence of the court excessive, improper, and in violation of the Sentencing Guidelines?

(Appellant's Brief at 3).

In his first issue, Appellant relies upon the *corpus delicti* rule for the proposition that the Commonwealth cannot obtain a conviction based solely on extra-judicial inculpatory statements. Appellant insists that the Commonwealth violated the *corpus delicti* rule in his case because it did not provide any evidence of intoxication other than Appellant's statements to the officer. Appellant complains that the Commonwealth should have presented other corroborating evidence, such as the results of field sobriety tests or

blood tests. Absent more, Appellant concludes that the court erred by convicting him of DUI.

As a prefatory matter, however, the Commonwealth correctly notes that Appellant failed to raise this issue in the trial court in the first instance. (**See** Commonwealth's Brief at 8). Therefore, this issue is waived. **See** Pa.R.A.P. 302(a) (explaining that, generally, issues not raised in lower courts are waived for purposes of appellate review and cannot be raised for the first time on appeal). Moreover, Appellant's Rule 1925(b) statement did not include this argument about the applicability of the *corpus delicti* rule. (**See** Rule 1925(b) Statement, filed 9/25/24, at 1-4). Appellant's argument is also waived on this basis. **See Commonwealth v. Hill**, 609 Pa. 410, 427, 16 A.3d 484, 494 (2011) (stating: "any issues not raised in a Rule 1925(b) statement will be deemed waived").

In his second issue, Appellant maintains that none of the Commonwealth's witnesses observed him drinking alcoholic beverages, and the only evidence of his intoxication were the statements Appellant provided to Officer Baloga. Appellant argues that the Commonwealth should have provided some evidence of field sobriety tests or blood alcohol content testing, and the record is devoid of evidence that Appellant operated his vehicle while impaired. Considering the quantity and quality of the Commonwealth's evidence, Appellant concludes that the DUI verdict was contrary to the sufficiency and weight of the evidence. We disagree.

Preliminarily, the distinction between a claim challenging the sufficiency of the evidence and a claim challenging the weight of the evidence is critical. *Commonwealth v. Widmer*, 560 Pa. 308, 318, 744 A.2d 745, 751 (2000).

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.
>
> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Id.* at 319-20, 744 A.2d at 751-52 (internal citations, quotation marks, and footnote omitted).

Additionally, the Motor Vehicle Code defines the offense of DUI as

follows:

**§ 3802.   Driving under influence of alcohol or controlled substance**

**(a)  General impairment.—**

(1)   An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1).

"Subsection (a)(1) is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving." ***Commonwealth v. Loeper***, 541 Pa. 393, 402-03, 663 A.2d 669, 673-74 (1995).

The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following:  the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests;  demeanor, including toward the investigating officer;  physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech.  Blood alcohol level may be added to this list, although it is not necessary….

\*    \*    \*

Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol—not on a particular blood alcohol level.

***Commonwealth v. Segida***, 604 Pa. 103, 115-16, 985 A.2d 871, 879 (2009).

Instantly, three witnesses provided trial testimony regarding Appellant's actions and behavior on the day of the incident. Timothy Brice, the co-owner of Bearded Barrel Brewing, testified that he was working there on August 6, 2022. (***See*** N.T. Trial, 11/28/23, at 18). Mr. Brice stated that Appellant arrived at noon and purchased a beer from him. (***Id.***) Mr. Brice testified that Appellant sat at a specific table and remained there for the entirety of his stay. Mr. Brice also observed that Appellant had three beer cans under his seat. "[O]ne of them was … nine-and-a-half-percent alcohol, so it's a fairly strong beer." (***Id.*** at 23).

Mr. Brice also testified about what happened when Appellant attempted to exit the premises:

> I actually saw [Appellant] getting into his car, close the door. I was cleaning up just normal, and then I kind of heard an engine back up. And it was a sustained tack, it wasn't just revving. It was just … an engine and pegged at a certain point, and that got my attention because that's not a normal sound for a vehicle. And I looked over, and at that point I heard the tires chirp and I saw his vehicle fly into our building.
>
> * * *
>
> [At] that point, I walked over to [Appellant's] car and I looked in. And I said, what are you doing? Because at this point, he's still fighting with the keys and not giving up keys. … [Appellant] was saying gibberish. Things like, don't worry. I'll patch your siding. I'll paint it. Things like that. … And I'm just saying, stop. You just drove through our building. Just stop. You need to give up your keys. And like I said, [Appellant] was just saying things like that. And it would go from that to just blank stares, just completely

out of it.

(*Id.* at 24, 26).

Lyle Newell assisted Mr. Brice at the brewery. Mr. Newell testified that he witnessed the vehicle crash into the brewery, and he identified Appellant as the driver. Mr. Newell provided further testimony about the circumstances surrounding the crash:

> [COMMONWEALTH:] You said you heard his engine rev. What happened after it revved?
>
> [WITNESS:] So the engine was revving. The vehicle went backward; it then went forward where the nose of the vehicle went through the wall of the building. It then went very quickly backward through the parking lot into the road at the back of the parking lot and stopped just short of vehicles parked on the other side of that road.
>
> [COMMONWEALTH:] Okay. Do you know how close you were? How far?
>
> [WITNESS:] I was probably 10 to 15 feet away from the building where the building was struck.
>
> [COMMONWEALTH:] Were you able to see [Appellant's] face when it happened?
>
> [WITNESS:] Yes, I saw his face. He looked pale and kind of had a blank stare.

(*Id.* at 37). Mr. Newell also stated that he traded beer with Appellant, as Appellant had brought additional beers to the event in a cooler. (*Id.* at 39).

Officer Baloga subsequently responded to the crash. When she arrived at the scene, the officer saw substantial damage to the wall of the brewery. She also observed Appellant sitting in the driver's seat of his damaged vehicle.

Officer Baloga interacted with Appellant and noticed his "glassy, bloodshot eyes; slurred speech. He had a delayed response." (*Id.* at 6). The officer also observed the odor of alcohol emanating from Appellant's person. Thereafter, Officer Baloga described Appellant's actions as follows:

> [COMMONWEALTH:]    Did you ask to see his license or registration?
>
> [WITNESS:]    I did.
>
> [COMMONWEALTH:]    Did he have any trouble providing you with those documents?
>
> [WITNESS:]    He did. He provided me with his license; however, he was not able to provide me with his registration. I asked him multiple times. He kept giving me his insurance card. Finally, I saw the registration in his hand, so I grabbed it.
>
> [COMMONWEALTH:]    Okay. So what did his appearance or behavior suggest to you at that point?
>
> [WITNESS:]    That he was intoxicated.
>
> [COMMONWEALTH:]    Did he make any statements regarding whether he had been drinking?
>
> [WITNESS:]    He told me that he had been drinking.
>
> [COMMONWEALTH:]    And did he tell you how his vehicle had been damaged?
>
> [WITNESS:]    He said that he struck the building.

(*Id.* at 6-7).

This testimony demonstrated that Appellant entered his vehicle and attempted to drive after consuming an unspecified number of beers at the

brewery. Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, sufficient circumstantial evidence supported the court's conclusion that Appellant had consumed an amount of alcohol that rendered him incapable of safe driving. *See Segida, supra*; *Loeper, supra*. To the extent that Appellant also argues that the verdict was against the weight of the evidence, the trial court found as follows:

> Although [Appellant] was convicted following a non-jury trial, the principles set forth by the Pennsylvania appellate courts equally apply. There was no inconsistent testimony presented by the Commonwealth during trial. This [c]ourt found the testimony of the Commonwealth's witnesses to be credible. Nothing leads to the conclusion that the verdict was against the weight of the evidence.

(Trial Court Opinion, filed 10/8/24, at 9) (unnumbered). Upon review, we cannot say that the trial court abused its discretion in reaching its conclusion. *See Widmer, supra*. Accordingly, Appellant is not entitled to relief on his second issue.

In his final issue, Appellant argues that the court imposed an excessive sentence. Appellant insists that the court erred by imposing a sentence that is "impermissibly greater than a proper sentence in the standard range." (Appellant's Brief at 20). Appellant's claims challenge the discretionary aspects of his sentence.

"Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right." *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa.Super. 2008), *cert. denied*, 556 U.S. 1264, 129 S.Ct. 2450, 174

L.Ed.2d 240 (2009). Prior to reaching the merits of a discretionary aspects of sentencing issue:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (quoting *Commonwealth v. Hyland*, 875 A.2d 1175, 1183 (Pa.Super. 2005)).

When appealing the discretionary aspects of a sentence, an appellant must invoke this Court's jurisdiction by including in his brief a separate concise statement demonstrating a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f).

> The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases.

*Phillips, supra* at 112 (emphasis in original) (internal citation and quotation marks omitted).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Moury*, 992 A.2d

162, 170 (Pa.Super. 2010).

> A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa.Super. 2015) (*en banc*), *appeal denied*, 633 Pa. 774, 126 A.3d 1282 (2015) (quoting *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa.Super. 2011)). "[A] bald assertion that a sentence is excessive does not by itself raise a substantial question justifying this Court's review of the merits of the underlying claim." *Commonwealth v. Fisher*, 47 A.3d 155, 159 (Pa.Super. 2012), *appeal denied*, 619 Pa. 677, 62 A.3d 378 (2013).

Instantly, Appellant timely filed a notice of appeal, he preserved his issue in the post-sentence motion, and his brief includes a Rule 2119(f) statement. Nevertheless, Appellant's assertion of excessiveness does not raise a substantial question. *See id.* The court imposed a sentence of intermediate punishment with the benefit of a presentence investigation ("PSI") report. Contrary to Appellant's assertions, this sentence falls within the standard range of the sentencing guidelines.[2] Thus, Appellant is not

---

[2] At the sentencing hearing, the court indicated: "The standard range is basically a 30-day minimum up to a six-month maximum." (N.T. Sentencing Hearing, 3/28/24, at 3). The parties did not dispute this calculation. Thereafter, Appellant specifically requested a sentence of intermediate punishment, which the court ultimately imposed. (*See id.* at 3-5).

entitled to relief on his third issue, and we affirm the judgment of sentence.

*See Commonwealth v. Bankes*, 286 A.3d 1302, 1307 (Pa.Super. 2022) (reiterating that standard range sentence imposed with benefit of PSI report will not be considered excessive).

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/24/2025