J-A26034-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| C. DANIEL RAE | : | |
| | : | |
| Appellant | : | No. 592 WDA 2025 |

Appeal from the Judgment of Sentence Entered April 14, 2025
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0003241-2022

BEFORE:  OLSON, J., STABILE, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: December 2, 2025**

Appellant, C. Daniel Rae, appeals from the judgment of sentence entered in the Westmoreland County Court of Common Pleas, following his bench trial convictions for driving under the influence ("DUI") – general impairment, DUI – highest rate of alcohol, and DUI – controlled substances.[1] We affirm.

The relevant facts and procedural history of this matter are as follows. On May 14, 2022, Fire Chief Sean Oskin of the Hartford Heights Fire Department came upon a smoking car lodged on an embankment on the side of a road.  As Chief Oskin approached the vehicle, which had its motor running, he discovered Appellant in the driver's seat slumped over the wheel.  Despite the fact that the car was lodged on the embankment, Appellant continued to

---

[1] 75 Pa.C.S.A. §§ 3802(a)(1), (c), and (d)(3), respectively.

press the accelerator, making the wheels spin and emit more smoke. Appellant appeared confused, lethargic and "out of it," and smelled of alcohol. (**See** N.T. Trial, 1/27/25, at 8). Chief Oskin told Appellant to shut the vehicle off before it caught on fire, and Appellant complied. Chief Oskin called 911 on his personal radio; 911 received the call and dispatched officers at 7:11 p.m.[2]

At 7:18 p.m., Detective Matthew Benick arrived on the scene and attempted to interview Appellant but could not do so, as he was incoherent. Appellant became belligerent and talked about being a mixed-martial arts fighter and beating everyone. Appellant also tried to say something about his sandal but could not complete his sentences. Detective Benick did not administer field sobriety tests because Appellant was walking with the aid of a crutch, had a brace and boot on his foot, and had a lump and contusions on his head.

Emergency medical services transferred Appellant to a local hospital for treatment, where Appellant initially agreed to provide a blood sample. However, he withdrew his consent after being read the DL-26B form.

_____

[2] On cross-examination, Chief Oskin estimated that he came upon the scene of the accident at some point between 3:30 and 5:30 p.m. (**See id.** at 11-12). The record indicates that this was a misstatement, as he also testified that he called 911 to report the accident. (**Id.** at 5). Detective Benick's testimony and the emergency line log confirm that dispatch received the call and dispatched police officers to the scene at 7:11 p.m.; Detective Benick documented that he arrived at the scene within five minutes of the call being received. (**See id.** at 17-18).

Appellant requested an attorney, and officers ceased the interview.[3]  Officers obtained a blood sample via search warrant, and Appellant's BAC was well above 0.16% and THC was present in his blood.  Appellant was subsequently charged with several counts of DUI.

On January 27, 2025, the matter proceeded to bench trial.  Appellant testified in his own defense and admitted to driving into the embankment.  Appellant denied being intoxicated at the time of the accident.  Rather, Appellant claimed that on the morning of May 14, 2022, he drove to McDonald's while wearing "flip-flop" style sandals.  He claimed that the flip-flop on his right foot got stuck under the accelerator and made it impossible to disengage and press the brake.  At that time, Appellant's vehicle crashed onto the large slab of concrete on the side of the road.

According to Appellant, he could not dislodge the vehicle on his own.  He attempted to call his friends for help, but when no one responded, he walked across the street to his home and began drinking alcohol.  At some point later that day, Appellant returned to the vehicle while intoxicated and started the engine with the intent of dislodging the car from the embankment.  Appellant stated that it was during this time that Chief Oskin discovered him.

_____

[3] Appellant's blood was drawn at 8:01 p.m. on May 14, 2022.  The sample was "four times the legal limit," which would be .320.  (**See** N.T. Trial, 1/27/25, at 34).  The Commonwealth introduced the blood analysis paperwork as Exhibits 6 and 7.  (**See id.** at 28-29).  The exhibits are not included within the certified record, but the trial court opinion notes that Appellant's BAC was .433% on the Allegheny Health Network lab report, and .415% on a second report from NMS labs.  (**See** Trial Court Opinion, 6/11/25, at 5).

At the conclusion of trial, the court convicted Appellant of three counts of DUI. On April 14, 2025, the court sentenced Appellant to 72 hours to six (6) months' incarceration and suspended the sentence pending appeal. Appellant did not file a post-sentence motion.

On May 13, 2025, Appellant timely filed a notice of appeal. On May 15, 2025, the court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. On May 28, 2025, Appellant timely complied.

On appeal, Appellant raises the following issues for our review:

> 1. Were the verdicts of guilty to 75 Pa.C.S.A. § 3802(a)(1); 75 Pa.C.S.A. § 3802(c); and 75 Pa.C.S.A. § 3802(d)(3) supported by sufficient evidence?
>
> 2. Did the trial court err by finding [Appellant] guilty against the weight of the evidence?

(Appellant's Brief at 3).

In Appellant's first issue, Appellant argues that the Commonwealth failed to prove that he was driving the vehicle while intoxicated at the time of the accident. According to Appellant, the Commonwealth failed to prove a "continuum of movement." (*Id.* at 9). Appellant admits that he was in control of the vehicle, the vehicle was running, and that he was pressing the accelerator with his foot but contends this is not enough to prove that he was operating it. Relying on **Bold v. PennDOT**, ___ Pa. ___, 320 A.3d 1185 (2024), Appellant insists that whether someone is guilty of DUI depends on whether they were driving. Appellant maintains that he was not driving at the time of the accident and only returned to the car intoxicated later in the day,

and suggests that as a result, the evidence was insufficient to support his convictions. We disagree.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

The Motor Vehicle Code defines the offenses of DUI - general impairment, DUI – highest rate of alcohol, and DUI – controlled substance, in

- 5 -

relevant part as follows:

> **§ 3802. Driving under influence of alcohol or controlled substance**
>
> **(a) General impairment.--**
>
> (1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.
>
> \* \* \*
>
> **(c) Highest rate of alcohol.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.
>
> **(d) Controlled substances.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> \* \* \*
>
> (3) The individual is under the combined influence of alcohol and a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle[.]

75 Pa.C.S.A. § 3802.

"Subsection (a)(1) is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which

rendered him incapable of safe driving." ***Commonwealth v. Loeper***, 541 Pa. 393, 402-03, 663 A.2d 669, 673-74 (1995). Further:

> The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary. …

***Commonwealth v. Segida***, 604 Pa. 103, 115-16, 985 A.2d 871, 879 (2009). Additionally, "[e]vidence of erratic driving is not a necessary precursor to a finding of guilt under the relevant statute." ***Commonwealth. v. Mobley***, 14 A.3d 887, 890 (Pa.Super. 2011). "Evidence that the driver was not in control of himself, such as failing to pass a field sobriety test, may establish that the driver was under the influence of alcohol to a degree which rendered him incapable of safe driving, notwithstanding the absence of evidence of erratic or unsafe driving." ***Commonwealth v. Palmer***, 751 A.2d 223 (Pa.Super. 2000).

Regarding Section 3802(d), "to convict a defendant under this section, the Commonwealth must establish three elements: 1) that the defendant drove; 2) while under the influence of a controlled substance; and 3) to a degree that impairs the defendant's ability to drive safely." ***Commonwealth v. Spence***, 290 A.3d 301, 309 (Pa.Super. 2023). "[S]ubsection 3802(d)(2) does not limit, constrain, or specify the type of evidence that the

Commonwealth can proffer to prove its case." ***Commonwealth v. Griffith***, 613 Pa. 171, 183, 32 A.3d 1231, 1239 (2011). "This provision by its plain text does not require that a drug be measured in the defendant's blood[.]" ***Id.*** Additionally, the Commonwealth is not required to introduce expert testimony to meet its burden. ***See Commonwealth v. Graham***, 81 A.3d 137, 146 (Pa.Super. 2013), *appeal denied*, 625 Pa. 662, 93 A.3d 462 (2014).

The term "operate" as used in the DUI statute "requires evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but not evidence that the vehicle was in motion." ***Commonwealth v. Johnson***, 833 A.2d 260, 263 (Pa.Super. 2003). Significantly, "an eyewitness is not required to establish that a defendant was driving, operating, or was in actual physical control of a motor vehicle. The Commonwealth can establish through wholly circumstantial evidence that a defendant was driving, operating or in actual physical control of a motor vehicle." ***Id.***

We also discuss two cases on which Appellant relies to support his claim on appeal—***Bold, supra*** and ***Charko v. PennDOT***, 327 A.3d 362 (Pa.Cmwlth. 2024), which involve license suspension. While different statutes are at issue in these cases,[4] Appellant asserts that the definition and discussion of the term "operate" in those cases is relevant to his appeal.

In ***Bold***, police officers discovered the driver unconscious in the driver's

---

[4] Both ***Bold*** and ***Charko*** involved 75 Pa.C.S.A. § 1547, related to implied consent for chemical testing.

seat of his car, parked legally in a mall parking lot near a bar. ***Bold, supra*** at 1187. The engine of the car was running and the headlights were on; the driver appeared to be "very" intoxicated when officers attempted to speak to him. ***See id.*** The driver admitted to drinking at the bar nearby but explained that he was intending to sleep in the car until he could drive home safely and legally. Officers nevertheless arrested the driver for DUI, and, after he refused to consent to a blood test, the driver was notified by PennDOT that his license would be suspended due to the refusal. On appeal, the driver challenged the license suspension, arguing that the circumstances did not give officers reasonable grounds to believe that he was operating or in actual physical control of the movement of his vehicle at the time of, or before, his interaction with the officer. The trial court granted relief, PennDOT appealed, and the Commonwealth Court reversed.

The matter proceeded to the Supreme Court of Pennsylvania, which reversed the Commonwealth Court. In so doing, the Supreme Court reiterated that the term "operate" in the implied consent statute "plainly encompasses 'driving,' and arguably subsumes 'actual physical control of the vehicle' as well. Once a car moves under a person's control, it clearly has been operated." ***Id.*** at \_\_\_, 320 A.3d at 1194. While examining the body of case law surrounding this issue, the ***Bold*** Court observed:

> No matter how diligently we endeavor to formalize the inquiry at hand, there is an inescapable fact-sensitivity to these cases. While some cases certainly have indicated that no suspicion of past or present movement of an entire vehicle is necessary to justify chemical testing (or, by

extension, to sustain a conviction for DUI), in the vast majority of those cases the facts have not depended on that proposition. Time and again, those cases have involved cars in gear, feet on pedals, drivers slumped over the wheel, cars located partially or wholly in the driving lanes of active roadways—all circumstances strongly suggestive of a vehicle that recently has moved. Many cases decided before [**Banner v. PennDOT**, 558 Pa. 439, 737 A.2d 1203 (1999)] underscored the difference between driving a car and mere presence in it. Requiring suspicion of prior actual motion before chemical testing may be demanded would change the result in very few of these cases, and would likely change very few outcomes moving forward. It would merely clarify that the statute must be interpreted in service of its clear intention to deter, detect, and punish intoxicated **driving**.

**Id.** at ___, 320 A.3d at 1197-98 (footnote omitted) (emphasis in original).

Thus, the Supreme Court concluded that the discovery of the driver asleep in the front seat with the lights on, parked legally in a parking lot, where the arresting officer believed the driver's account of sleeping off his intoxication, did not give rise to reasonable suspicion that the driver had "operated" the vehicle within the meaning of the statute. **See id.** at ___, 320 A.3d at 1201.

Similarly, in **Charko**, the driver was found "sleeping fully reclined in the driver seat with the engine running."[5] **See Charko, supra** at 367. The Commonwealth Court, applying **Bold**, held that officers lacked reasonable grounds to believe that the driver had operated the vehicle while intoxicated. **See id.**

On the contrary, in **Commonwealth v. Cravener**, ___ A.3d ___, 2025

---

[5] Although decisions of the Commonwealth Court are not binding upon this Court, they may be considered as persuasive authority. **Commonwealth v. Brown**, 240 A.3d 970, 973 n.3 (Pa.Super. 2020).

- 10 -

PA Super 172 (Pa.Super. filed Aug. 8, 2025), the defendant was discovered parked inappropriately in a parking lot with his head down, his truck running with the keys in the ignition, and the driver's side door open, causing a loud beeping noise. When questioned, the defendant explained he had been having a bad day, left his girlfriend's house earlier in the evening, and he was contemplating going to Walmart to handle a situation with her. His eyes were bloodshot, watery, and appeared droopy. After being ordered out of the car and patted down, police officers found a THC vape pen, a straw with white powder residue, and a Suboxone strip in the defendant's pocket. The defendant admitted to having snorted Suboxone less than an hour prior, and failed sobriety tests.

On appeal, this Court rejected the defendant's reliance on **Bold**, agreeing with the trial court that the responding officer had reasonable bases to believe the defendant had operated his vehicle while intoxicated. **See id.** In so stating, this Court highlighted the fact that the defendant's truck was parked in the middle of the parking lot, not in a legal parking spot, as well as his statements regarding his actions prior to the officer's arrival.[6] **See also Commonwealth v. Norris**, No. 1041 WDA 2024 (Pa.Super. filed Oct. 3,

---

[6] This Court deemed waived the defendant's precise claim on appeal, arguing that the trial court should have sua sponte dismissed the prosecution where his conduct constituted a de minimus infraction under 18 Pa.C.S.A. § 312, for failure to preserve it in the trial court. Nevertheless, this Court observed that even if not waived, the defendant's reliance on **Bold** was meritless.

2025) (unpublished memorandum)[7] (holding that Commonwealth established driver's actual physical control of vehicle where police observed driver in driver's seat of parked car with engine running, and driver admitted she had recently used drugs elsewhere).

Instantly, the trial court observed:

> In the instant case, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, there was sufficient evidence to find that [Appellant] drove, operated, or was in actual physical control of the movement of a motor vehicle upon a highway or trafficway while intoxicated. Specifically, [Appellant] was inside of a vehicle that was crashed on a hillside against a telephone pole across the street from his residence. Both [Appellant] and the vehicle were captured in body camera footage from the incident. Notably, [Appellant's] car was partially on Sherrick Drive, which is a public roadway open to vehicular traffic. [Chief] Oskin, who worked for twenty-one years as a fire chief, observed [Appellant's] car emitting smoke to the point where he believed that it posed a fire hazard. [Appellant] was seen in the driver's seat of the vehicle leaning over the steering wheel. The vehicle's engine was running with the gear in drive or reverse. [Appellant] had his foot on the accelerator, causing the tires to spin and smoke. Detective Benick also noticed that [Appellant] had a lump and fresh contusions on his forehead. The testimony and evidence presented by the Commonwealth further demonstrated [Appellant's] severely intoxicated state at the scene. Upon consideration of the totality of the circumstances, including the location and condition of the vehicle and [Appellant], the Commonwealth proved beyond a reasonable doubt that [Appellant] drove, operated, or was in actual physical control of the movement of a motor vehicle upon a highway or trafficway while intoxicated. This [c]ourt did not find [Appellant's] self-serving explanation of the incident to be credible based upon the above-referenced testimony and

---

[7] *See* Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value).

evidence.

(Trial Court Opinion, 6/11/25, at 11-14) (citations omitted). The court further noted that **Bold** and **Charko** were both distinguishable cases where the defendants in those cases had been sleeping inside of a vehicle without any evidence that they had operated the vehicles while intoxicated. (**See id.** at 14).

The record supports the trial court's analysis. Here, Appellant's car was crashed on the side of a public roadway and lodged on an embankment. Appellant was awake in the driver's seat, though he was slumped over the wheel, and his foot was actively pressing down on the gas pedal. The car was smoking, showing signs that it had recently been operated. Appellant admitted to drinking that day and was clearly intoxicated. Therefore, Appellant was not "merely present" in his vehicle while intoxicated, and officers had reasonable bases to believe Appellant had operated the vehicle while intoxicated. **See Cravener, supra**; **Norris, supra**. **Compare Bold, supra**; **Charko, supra**. Further, blood tests confirmed that Appellant's BAC was well over .16% and contained THC metabolites. On this record, the evidence was sufficient to support each of Appellant's DUI convictions. **See Segida, supra**; **Spence, supra**. **See also Sebolka, supra**.

In Appellant's second issue, he argues that the verdict was against the weight of the evidence. Appellant reiterates similar arguments in his weight claim as presented in his sufficiency challenge. Appellant concludes that this Court should award him a new trial. We disagree.

Preliminarily, we observe that a challenge to the weight of the evidence must be preserved by a motion for a new trial. Pennsylvania Rule of Criminal Procedure 607 provides:

**Rule 607. Challenges to the Weight of the Evidence**

(A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or

(3) in a post-sentence motion.

Pa.R.Crim.P. 607(A)(1)-(3). "An appellant's failure to avail himself of any of the prescribed methods for presenting a weight of the evidence issue to the trial court constitutes waiver of that claim." ***Commonwealth v. Weir***, 201 A.3d 163, 167 (Pa.Super. 2018), *aff'd*, 662 Pa. 402, 239 A.3d 25 (2020). ***See also*** Pa.R.Crim.P. 607, *Comment* (stating: "The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived").

Further, this Court has held:

The fundamental tool for appellate review is the official record of what happened at trial, and appellate courts are limited to considering only those facts that have been duly certified in the record on appeal. To ensure that the appellate courts have all necessary records, the Pennsylvania Rules of Appellate Procedure provide for the transmission of certified records from trial courts to appellate courts.

\* \* \*

[Pa.R.A.P. 1911] makes it clear that appellants must order all transcripts necessary to decide the appeal, and that the Superior Court may take any action it deems appropriate, including dismissal of the appeal, if the appellant does not order the necessary transcripts.

*Commonwealth v. Gillen*, 798 A.2d 225, 229 (Pa.Super. 2002) (quoting *Commonwealth v. Williams*, 552 Pa. 451, 456-457, 715 A.2d 1101, 1103-1104 (1998)).  It is the **appellant's** responsibility to order all transcripts necessary for appellate review.  *Commonwealth v. Steward*, 775 A.2d 819, 833-34 (Pa.Super. 2001) (holding that appellant is responsible for ordering all transcripts necessary for review).

Here, Appellant did not preserve his challenge to the weight of the evidence in a post-sentence motion.  *See* Pa.R.Crim.P. 607(A)(1)-(3).  Additionally, the notes of testimony from the sentencing hearing are not included in the certified record.  Upon informal inquiry, this Court confirmed that the notes of testimony from the sentencing hearing were **not** transcribed.  An examination of the certified record indicates that Appellant did not file a request for transcripts contemporaneous with his notice of appeal in conformity with Pa.R.A.P. 1922 (transcription of notes of testimony).  Thus, we cannot determine if Appellant preserved a challenge to the weight of the evidence orally following sentencing.  Because it is Appellant's responsibility to ensure a complete record for appellate review and he failed to do so, we must conclude that Appellant did not preserve this claim at sentencing.  *See Gillen, supra*.

Additionally, the trial court declined to address Appellant's weight claim

in its Rule 1925(a) opinion, stating that Appellant had failed to preserve the claim under Rule 607. Appellant makes no statement, claim, or argument regarding his preservation of the issue. Therefore, Appellant's second issue on appeal challenging the weight of the evidence is waived.[8] *See id.*; *Weir, supra*. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

12/2/2025

---

[8] Moreover, even if not waived, Appellant's weight claim would not entitle him to relief. Appellant argues that it is "a legal impossibility to convict any man of [DUI] when he was not driving." (Appellant's Brief at 14). Appellant restates his sufficiency claim and contends that the Commonwealth presented no witnesses who observed the car accident or Appellant's physical condition at the time of the crash. Nevertheless, the Commonwealth is permitted to prove its case through the use of circumstantial evidence, as it did here. Further, the trial court found Appellant's testimony self-serving and incredible. (*See* Trial Court Opinion, 6/11/25, at 13). Essentially, Appellant asks that we substitute our judgment for that of the trial court, which we decline to do. *See Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (explaining that weight of evidence is exclusively for finder of fact; appellate court cannot substitute its judgment for that of fact-finder). Accordingly, Appellant would not be entitled to relief on his weight claim even if properly preserved.